1 │ JAMES P. COLLINS, JR. (SBN 47608)
2 │ COTKIN & COLLINS
  │ A PROFESSIONAL CORPORATION
3 │ 200 West Santa Ana Blvd., Suite 800
  │ P.O. Box 22005
4 │ Santa Ana, CA 92702-2005
  │ Telephone:  (714) 835-2330
5 │ Facsimile:  (714) 835-2209
  │ Email: jpc@cclawfirm.cc

FILED

2007 OCT 18 AM 10: 37

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

6 │ Attorneys for Plaintiffs STEVEN SCHUSSLER
7 │ and SCHUSSLER CREATIVE, INC.

8 │ UNITED STATES DISTRICT COURT

9 │ SOUTHERN DISTRICT OF CALIFORNIA

10 │

11 │ STEVEN SCHUSSLER and           Case No.
   │ SCHUSSLER CREATIVE, INC.,
12 │                               '07 CV 2016 IEG      AJB
13 │           Plaintiffs,         COMPLAINT FOR MONETARY
   │                               DAMAGES (TORT), INJUNCTIVE
14 │       vs.                     RELIEF, AND DECLARATORY
   │                               RELIEF; DEMAND FOR JURY
15 │ J. FRANK WEBSTER, aka "MR.
   │ HOT DOG," aka "UNCLE
16 │ FRANK,"
17 │           Defendant.
18 │

19 │      **COME NOW** Plaintiffs STEVEN SCHUSSLER ("SCHUSSLER") and

20 │ SCHUSSLER CREATIVE, INC., ("SCHUSSLER CREATIVE")

21 │ (collectively "Plaintiffs"), and for their Complaint

22 │ against Defendant J. FRANK WEBSTER, aka "Mr. Hot Dog", aka

23 │ "Uncle Frank", state as follows:

24 │

25 │                    **THE PARTIES**

26 │      1.   Plaintiff SCHUSSLER CREATIVE, INC. ("SCHUSSLER

27 │ CREATIVE") is a corporation duly licensed by the state of

28 │ ///

220305-1.wpd                      -1-

1  Minnesota with its principal place of business in Golden

2  Valley, Minnesota, and is a citizen of Minnesota.

3      2.    Plaintiff STEVEN SCHUSSLER ("Mr. SCHUSSLER") is a

4  resident and citizen of the State of Minnesota and is the

5  Chief Executive Officer and Chairman of the Board of

6  Schussler Creative.

7      3.    Defendant J. FRANK WEBSTER aka "Mr. HOT DOG" and

8  aka "UNCLE FRANK" ("Mr. WEBSTER") is a resident and citizen

9  of the State of California residing within the City of El

10 Cajon, California.

11     4.    Upon information and belief, Mr. WEBSTER owns a

12 collection of hot dog themed memorabilia.  He does not

13 operate a business in relation to his collection. Mr.

14 WEBSTER does not sell products or services or conduct

15 commerce of any kind in relation to his memorabilia, nor is

16 Mr. WEBSTER's collection commercially open to the general

17 public.

18     5.    Upon information and belief, Defendant Mr.

19 WEBSTER uses the following pseudonyms in correspondence and

20 as his online persona: "Mr. HOT DOG," and "UNCLE FRANK."

21                  **JURISDICTION AND VENUE**

22     6.    This Court has jurisdiction over this dispute

23 pursuant to 28 U.S.C. § 1332 because this is a controversy

24 between citizens of different states and the amount in

25 controversy exceeds $75,000.

26     7.    Venue is appropriate in this judicial district

27 under 28 U.S.C. §1391(a) because a substantial part of the

28 ///

1  events giving rise to this case occurred in this judicial

2  district and Defendant resides in this district.

### FACTUAL BACKGROUND

4       8.   SCHUSSLER CREATIVE is the owner of U.S. Trademark

5  application Serial No. 78/591560 for the "HOT DOG HALL OF

6  FAME" trademark for restaurant services, retail store, and

7  wholesale distributorship services. (Exhibit 1).

8       9.   SCHUSSLER CREATIVE has been commercially

9  developing the concept of the HOT DOG HALL OF FAME since

10  approximately 1997 and, with its business partners plans to

11  open two hundred HOT DOG HALL OF FAME units over the next

12  ten years.

13       10.  RED Development, LLC, ("RED Development")

14  develops, leases, manages and owns shopping centers

15  throughout the nation. SCHUSSLER CREATIVE formed a

16  contractual partnership with RED Development in May of 2007

17  and in association with RED Development is developing

18  several restaurant and entertainment concepts, including

19  the HOT DOG HALL OF FAME.

20       11.  Together SCHUSSLER CREATIVE and RED Development

21  are currently in the preliminary stages of opening  "HOT

22  DOG HALL OF FAME" restaurants in the cities of Sparks,

23  Nevada, and Kansas City, Missouri.

24       12.  Between June and September 2007, Mr. WEBSTER

25  contacted several media organizations and hospitality

26  companies by e-mail alleging that the concept, name and

27  related intellectual property of the HOT DOG HALL OF FAME

28  belong to him. Mr. WEBSTER further alleged that Mr.

1  SCHUSSLER and SCHUSSLER CREATIVE have stolen the concept of
2  THE HOT DOG HALL OF FAME from him. The media organizations
3  and hospitality companies to which Mr. WEBSTER made these
4  allegations include Host Marriott, Levy Restaurants,
5  Success Magazine, The Hartford Courant, The Rocky Mountain
6  News, The Chicago Sun Times, The San Diego Union Tribune
7  and Chain Leader Magazine. (Exhibit 2).
8     13. SCHUSSLER CREATIVE's legal counsel contacted Mr.
9  WEBSTER and informed him in a letter dated June 11, 2007
10 that SCHUSSLER CREATIVE is the owner of the U.S. Trademark
11 "HOT DOG HALL OF FAME." (Exhibit 3)  SCHUSSLER CREATIVE's
12 legal counsel further instructed Mr. WEBSTER of the law
13 regarding trademark rights and requested that Mr. WEBSTER
14 stop sending false, misleading, and defamatory statements
15 regarding SCHUSSLER CREATIVE or any of its principals or
16 agents. (Exhibit 4).
17    14.  Between June and September 2007, Mr. WEBSTER
18 contacted RED Development several times by e-mail calling
19 Mr. SCHUSSLER a "liar," a "thief" and a "con man," and
20 claimed Mr. SCHUSSLER is attempting to steal the concept
21 and name of THE HOT DOG HALL OF FAME from him. (Exhibit 5).
22    15. Mr. WEBSTER maintains an online newsletter at his
23 website: http://www.thehotdoghalloffame.com/. On this
24 website, in a newsletter dated 16 June 2007, Mr. WEBSTER
25 describes his intention to damage Mr. SCHUSSLER and
26 SCHUSSLER CREATIVE and states his plan as follows: "we
27 can't possibly hope to prevail in the legal system as
28 [SCHUSSLER] is far more affluent than we are or ever really

1 hope to be. Instead, we are going to 'poison the well' so

2 to speak. If he thinks he can steal from us he has another

3 thing [sic] coming." (Exhibit 6)

4    16. Mr. WEBSTER has begun to execute his plan by

5 contacting SCHUSSLER CREATIVE's business partners, the

6 media, and potential business associates, accusing

7 SCHUSSLER CREATIVE of theft of intellectual property and

8 threatening legal action. In the June 16, 2007 newsletter,

9 Mr. WEBSTER posted a copy of a letter sent to James

10 Rittenberg, another of SCHUSSLER CREATIVE's business

11 partners in the Chicago area. In it Mr. WEBSTER threatens:

12 "be advised that we plan to first blacken both of your eyes

13 (yours and Mr. SCHUSSLER's) professionally, first in the

14 papers and on TV, then we will see you in court." (Exhibit

15 6)

16    17.  Thereafter, Mr. WEBSTER wrote an e-mail dated

17 September 18, 2007, and sent the e-mail to City of Sparks

18 Mayor Geno Martini, as well as to Sparks City Council

19 Members. In this e-mail, Mr. WEBSTER refers to Mr.

20 SCHUSSLER as a "liar," a "thief" and a "con man," and

21 claims Mr. SCHUSSLER is attempting to steal the concept and

22 name of THE HOT DOG HALL OF FAME from him. Mr. WEBSTER

23 further writes that he soon plans to go "VERY public" with

24 these accusations and warns Mayor Martini of the "fallout

25 this will cause." (Exhibit 7)  The e-mail contains links to

26 Mr. WEBSTER's website referenced above.

27    18. Upon information and belief, Mr. WEBSTER has

28 written e-mails to city officials in Kansas City, Missouri,

1 │ similar to those addressed to city officials in Sparks,

2 │ Nevada.

3 │     19.  Mr. WEBSTER's allegations relating to Plaintiffs

4 │ are false and defamatory.

5 │     20.  Mr. SCHUSSLER has taken dozens of calls and

6 │ inquiries from his business partners and associates in

7 │ regard to Mr. WEBSTER's disparaging e-mail campaign and has

8 │ taken time to assure his business partners and associates

9 │ that SCHUSSLER CREATIVE does in fact own the rights to the

10 │ HOT DOG HALL OF FAME concept.

11 │     21. Mr. WEBSTER's false statements constitute illegal

12 │ and unjustified interference with the business

13 │ relationships of Mr. SCHUSSLER, and SCHUSSLER CREATIVE and

14 │ have injured Plaintiffs' reputation and have damaged,

15 │ disrupted, and caused undue delay to SCHUSSLER CREATIVE's

16 │ business affairs.

17 │ **COUNT I**

18 │ **(Defamation)**

19 │     22.  Plaintiffs restate and re-allege paragraphs 1

20 │ through 21, the same as if fully set forth herein.

21 │     23.  Defendant's accusations that Mr. SCHUSSLER is a

22 │ "liar," a "thief," and a "con-man" as well as the

23 │ allegation that SCHUSSLER CREATIVE has taken the concept of

24 │ the HOT DOG HALL OF FAME from him are false, unprivileged,

25 │ and defamatory.

26 │     24.  Defendant published false, unprivileged, and

27 │ defamatory statements by sending these e-mail messages to

28 │ third parties.

1      25. At the time that Defendant wrote the false,

2  unprivileged, and defamatory e-mail messages, Defendant

3  knew the accusations to be false, unprivileged, and

4  defamatory.

5      26. Defendant wrote the defamatory e-mail messages

6  with the purpose of harming SCHUSSLER CREATIVE and Mr.

7  SCHUSSLER.

8      27. As a result of Defendant's publication of false,

9  unprivileged, and defamatory e-mail messages, Plaintiffs

10 Mr. SCHUSSLER and SCHUSSLER CREATIVE's reputation and

11 business has suffered and will continue to suffer

12 irreparable harm unless the conduct of Defendant is

13 enjoined by the Court. In addition, Mr. SCHUSSLER and

14 SCHUSSLER CREATIVE have been damaged in an amount to be

15 determined, but in excess of $75,000. Defendant has

16 committed these acts fraudulently and maliciously, knowing

17 his accusations are false, and with the intent to injure

18 plaintiffs, thereby entitling plaintiffs to an award of

19 exemplary damages to punish defendant.

20                          **COUNT II**

21 **(Tortious Interference with Prospective Economic Advantage)**

22          **(On behalf of Plaintiff SCHUSSLER CREATIVE)**

23      28. Plaintiff SCHUSSLER CREATIVE restates and re-

24 alleges paragraphs 1 through 26, the same as if fully set

25 forth herein.

26      29. Prior to the tortious conduct of defendant,

27 SCHUSSLER CREATIVE enjoyed a good relationship with its

28 business partners, customers, and with business and

1   community leaders in the areas in which SCHUSSLER CREATIVE

2   is conducting business and cultivating prospective

3   business.

4       30.  Through Defendant's disparaging e-mail campaign

5   to business and community leaders and to the media,

6   Defendant has tortiously interfered with SCHUSSLER

7   CREATIVE's prospective relationship with its present and

8   prospective business partners, associates, and customers.

9       31.  Upon information and belief, through his conduct

10  Defendant has induced or otherwise caused third parties to

11  question or doubt SCHUSSLER CREATIVE's true ownership of

12  the HOT DOG HALL OF FAME trademark and concept and/or

13  otherwise damaged SCHUSSLER CREATIVE's reputation with

14  third parties.

15      32.  The actions of Mr. WEBSTER are intentional,

16  improper and without justification.

17      33.  Mr. WEBSTER is acting with the express purpose of

18  harming SCHUSSLER CREATIVE.

19      34. Plaintiff SCHUSSLER CREATIVE has suffered and will

20  continue to suffer irreparable harm unless the conduct of

21  Defendant is enjoined by the Court. In addition, SCHUSSLER

22  CREATIVE has been damaged by defendant's conduct in an

23  amount to be determined, but in excess of $75,000.

24  Defendant has committed these acts fraudulently and

25  maliciously, knowing his accusations are false and with the

26  intent to injure plaintiff, thereby entitling plaintiff to

27  an award of exemplary damages to punish defendant.

28  ///

## COUNT III

### (Tortious Interference with Contract)

### (On Behalf of Plaintiff SCHUSSLER CREATIVE)

35.  Plaintiff SCHUSSLER CREATIVE restates and re-alleges paragraphs 1 through 26 and 29 through 33, the same as if fully set forth herein.

36.  SCHUSSLER CREATIVE has valuable and competitively advantageous contractual relations with its business partners and associates.

37.  Defendant knew of these contractual relationships.

38.  Defendant has tortiously interfered with these contractual relations by unlawfully defaming SCHUSSLER CREATIVE in letters and e-mails addressed to current and potential business associates of SCHUSSLER CREATIVE and by falsely accusing SCHUSSLER CREATIVE of theft of intellectual property.

39. As a direct and proximate result of defendant's conduct, SCHUSSLER CREATIVE has suffered damages in an amount to be determined, but in excess of $75,000. SCHUSSLER CREATIVE has suffered irreparable harm and will continue to suffer irreparable harm unless and until the unlawful conduct of defendant is enjoined by this court. Defendant committed these acts fraudulently and maliciously, knowing his accusations were false and with the intent to injure plaintiff, thereby entitling plaintiff to an award of exemplary damages to punish defendant.

///

## COUNT IV

### (Injunctive Relief)

40. Plaintiffs restate and re-allege paragraphs 1 through 27, 29 through 34, and 36 through 39, the same as if fully set forth herein.

41. Plaintiffs seek injunctive relief, including the issuance of a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendant from:

    a.   Interfering with SCHUSSLER CREATIVE's present or prospective business relationships.

    b.   Sending e-mails, letters, or otherwise corresponding with current or potential business associates of SCHUSSLER CREATIVE with the purpose of disrupting the business of SCHUSSLER CREATIVE.

    c.   Sending e-mails, letters, or otherwise corresponding with any person, business, corporation, city, municipality, or any representative of a city or municipality with which SCHUSSLER CREATIVE has a contractual or licensing agreement with the purpose of disrupting the business of SCHUSSLER CREATIVE.

    d.   Sending e-mails, letters, or other correspondence addressed to current or potential business associates of SCHUSSLER CREATIVE that in any way allege theft,

1      misappropriation, or infringement of

2      intellectual property relating to the HOT DOG

3      HALL OF FAME by SCHUSSLER CREATIVE.

4    e.   Sending e-mails, letters, or other

5      correspondence addressed to any person,

6      business, corporation, city, municipality, or

7      any representative of a city or municipality

8      that in any way allege that Mr. SCHUSSLER

9      and/or SCHUSSLER CREATIVE have stolen,

10      misappropriated or infringed intellectual

11      property relating to the HOT DOG HALL OF

12      FAME.

13            **COUNT V**

14        **(Declaratory Relief)**

15    42.  Plaintiffs restate and re-allege paragraphs 1

16 through 27, 29 through 34, 36 through 39, the same as if

17 fully set forth herein.

18    43.  SCHUSSLER CREATIVE is the owner of U.S. Trademark

19 Application Serial No. 78/591560 for the "HOT DOG HALL OF

20 FAME" trademark for restaurant services, retail store and

21 wholesale distributorship services. (See Exhibit 1).

22    44. Defendant has no application on record with the

23 U.S. Patent and Trademark Office.

24    45.  Plaintiffs are entitled to declaratory judgment

25 that SCHUSSLER CREATIVE is the record owner of the HOT DOG

26 HALL OF FAME trademark application and that SCHUSSLER

27 CREATIVE has the right to use the name and concept of the

28 HOT DOG HALL OF FAME.

1

### PRAYER FOR RELIEF

2       **WHEREFORE** Plaintiffs pray for judgment against the

3   defendant as follows:

4       1.   An award of general, special and exemplary

5   damages on Counts I, II, and III according to proof at the

6   time of trial.

7       2.   On Count IV, that Defendant J. FRANK WEBSTER aka

8   "Mr. HOT DOG" aka "UNCLE FRANK," and anyone acting in

9   concert with him be enjoined preliminarily and permanently,

10  including the issuance of a temporary restraining order,

11  from interfering with SCHUSSLER CREATIVE's present or

12  prospective business relationships as more fully described

13  in the Fourth Count.

14      3.   On Count V, that the court declare that SCHUSSLER

15  CREATIVE is the record owner of the HOT DOG HALL OF FAME

16  trademark application and that SCHUSSLER CREATIVE has the

17  right to use the name and concept of the HOT DOG HALL OF

18  FAME.

19      4.   For such other and further relief as the Court

20  deems just and equitable.

21

22  DATED: October 17, 2007      COTKIN & COLLINS

                                 A PROFESSIONAL CORPORATION

23

24                         By    _____

25                               James P. Collins, Jr.

                                 Attorneys for Plaintiffs

                                 STEVEN SCHUSSLER and SCHUSSLER

26                               CREATIVE, INC.

27

28

1

<u>**DEMAND FOR JURY TRIAL**</u>

2          Plaintiffs request a jury trial on Counts I, II, and

3    III of their complaint.

4

5    DATED: October 7, 2007          COTKIN & COLLINS
                                     A PROFESSIONAL CORPORATION
6

7                             By    _James P. Collins_

8                                   James P. Collins, Jr.
                                    Attorneys for Plaintiffs
                                    STEVEN SCHUSSLER and SCHUSSLER
9                                   CREATIVE, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on 2007-10-07 14:57:08 ET**

**Serial Number:** 78591560 Assignment Information          Trademark Document Retrieval

**Registration Number:** (NOT AVAILABLE)

**Mark**

# HOT DOG HALL OF FAME

**(words only):** HOT DOG HALL OF FAME

**Standard Character claim:** Yes

**Current Status:** A request for the third extension of time to file a statement of use has been granted.

**Date of Status:** 2007-05-29

**Filing Date:** 2005-03-21

**The Notice of Allowance Date is:** 2006-03-14

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 106

**Attorney Assigned:**
FOSTER STEVEN R Employee Location

**Current Location:** 700 -Intent To Use Section

**Date In Location:** 2006-09-21

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. Schussler Creative, Inc.

**Address:**

EXHIBIT 1          -14-

Schussler Creative, Inc.
858 Decatur Avenue North
Golden Valley, MN 55427
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Minnesota

## GOODS AND/OR SERVICES

**International Class:** 035
**Class Status:** Active
Retail store and wholesale distributorship services in the field of clothing, namely, pants, shirts, hats, sweatshirts, shorts, swimwear, t-shirts, jackets of all types, sports caps, boxer shorts, gloves, sweat pants, tank tops, jerseys, pajamas, sweaters, belts, nightshirts, head bands, wrist bands, shoes and sandals, jewelry, key chains, minerals, stones, figurines, plush animals, puppets, science tools, namely microscopes and metal detectors, toys, namely character toys and branded toys, drinkware, books, music and videotapes, home accessories, body care items, food products, clocks, watches, games, and electronic gadgets
**Basis:** 1(b)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 043
**Class Status:** Active
Restaurant services for consumption on the premises
**Basis:** 1(b)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

## ADDITIONAL INFORMATION

**Disclaimer:** "HOT DOG"

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

2007-05-29 - Extension 3 granted

2007-05-29 - Extension 3 filed

2007-05-29 - TEAS Extension Received

2007-01-18 - Extension 2 granted

2007-01-18 - Extension 2 filed

2007-01-18 - TEAS Extension Received

2006-09-21 - Extension 1 granted

2006-08-25 - Extension 1 filed

2006-08-25 - PAPER RECEIVED

2006-03-14 - Notice of allowance - mailed

2005-12-20 - Published for opposition

2005-11-30 - Notice of publication

2005-10-29 - Law Office Publication Review Completed

2005-10-21 - Assigned To LIE

2005-10-18 - Examiner's amendment mailed

2005-10-18 - Approved for Pub - Principal Register (Initial exam)

2005-10-18 - Examiners Amendment -Written

2005-10-13 - Assigned To Examiner

2005-03-28 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Correspondent**
JOHN W PROVO
MASLON EDELMAN BORMAN & BRAND LLP
3300 WELLS FARGO CTR
90 S 7TH ST
MINNEAPOLIS MN 55402
Phone Number: (612) 672-8331

**Domestic Representative**
John W. Provo
Phone Number: (612) 672-8331

Side - 1



**NOTICE OF APPROVAL**
**OF EXTENSION REQUEST**
**MAILING DATE: May 31, 2007**

A Notice of Allowance issued for the trademark application identified below on Mar 14, 2006. The THIRD request for extension of time to file a Statement of Use has been approved. Applicant must continue to file extension requests every 6 months calculated from the date the Notice of Allowance was issued until a Statement of Use is filed. Please note that a Statement of Use cannot be filed more than 36 months from the issuance date of the Notice of Allowance.

For further information, visit our website at: http://www.uspto.gov or call the Trademark Assistance Center at 1-800-786-9199.

SERIAL NUMBER:    78591560
MARK:             HOT DOG HALL OF FAME
OWNER:            Schussler Creative, Inc.

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA 22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

JOHN W PROVO
MASLON EDELMAN BORMAN & BRAND LLP
3300 WELLS FARGO CTR
90 S 7TH ST
MINNEAPOLIS, MN  55402

**From:** Mr.HotDog [mailto:Mr.HotDog@Cox.Net]
**Sent:** Sunday, June 10, 2007 1:22 PM
**To:** Steve Schussler
**Cc:** ir@hosthotels.com; reuteman@RockyMountainNews.com; readerep@courant.com; dhoekstra@suntimes.com; peter.rowe@uniontrib.com
**Subject:** Dear Mr. Schussler:

CEASE & DESIST:


This is the SECOND time we've had to advise you that the concept, name, URL and good reputation of **The Hot Dog Hall Of Fame** is solely our intellectual property(s).


To refresh your memory a bit: we met at the Fisherman's Wharf location of **The Rainforest Cafe** shortly after it opened.

You tried to buy our collection and then, when we mentioned our obligation to the hundreds of contributors that made our World Class collection possible, you told us that you were just going to take our concept.


Shortly after that meeting, we discovered that you had one of your minions from **Gold Coast Hot Dogs** register several versions of our URL.


We responded with a formal demand that you Cease & Desist at that time.

If your memory is a little hazy, we'd be glad to forward that letter to you and all of the addressees above.


However, if you'd like to eventually fund it all for **US**, just keep doing what you're doing and we'll turn the lawyers loose on you...


You have been warned, AGAIN!


CEASE & DESIST


With Relish,

**Uncle Frank**

EXHIBIT 2      -18-

**The Hot Dog Hall Of Fame**

www.thehotdoghalloffame.com

**PS:** We've already contacted Host Marriott, Levy Restaurants, Success Magazine, The Hartford Courant, Rocky Mountain News, The Chicago Sun Times, The San Diego Union Tribune and Chain Leader Magazine.

**NOTE:** For those of you who received this as a BCC file (Blind Copy), you can see what Mr. Schussler is attempting to do in this article: http://www.successmagazine.com/article.php?article_id=54

There's another one here: http://www.chainleader.com/web-exclusives/schussler.asp

And Mr. Schussler's web site: www.schusslercreative.com

EXHIBIT 3

**From:** John Provo [mailto:John.Provo@maslon.com]
**Sent:** Monday, June 11, 2007 6:02 PM
**To:** Mr.HotDog@Cox.Net
**Cc:** Holod, Doug; Steve Schussler
**Subject:** Response to Demand Letter

Dear Mr. Bernier:

This firm represents Schussler Creative, Inc.  Please see the attached response to your demand regarding our client's "HOT DOG HALL OF FAME" service mark for restaurant services, retail store and wholesale distributorship services.

**John Provo | Partner**
john.provo@maslon.com | bio
(p) 612.672.8331 | (f) 612.642.8331

# MASLON

Maslon Edelman Borman & Brand, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140
www.maslon.com | map/directions
**When it matters most.**

CIRCULAR 230 DISCLOSURE: Pursuant to Circular 230 promulgated by the Internal Revenue Service, if this email, or any attachment hereto, contains advice concerning any federal tax issue or submission, please be advised that it was not intended or written to be used. and that it cannot be used. for the purpose of avoiding federal tax penalties unless otherwise expressly indicated.

CONFIDENTIALITY NOTICE: This e-mail transmission and any attachments accompanying it contain confidential information belonging to the sender that may be protected by the attorney-client or work product privileges. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please notify the sender by reply e-mail, and then destroy all copies of this transmission.

BLUEBIRD (888) 477-0700
OFFICE SUPPLIES
www.bluebirdonline.com

John W. Provo
Direct Phone: (612) 672-8331
Direct Fax: (612) 642-8331
John.Provo@maslon.com

[SENT VIA ELECTRONIC MAIL AND CMRRR]
Frank Webster
El Cajon, California

     Re:    HOT DOG HALL OF FAME Trademark

Dear Mr. Webster

     This firm represents Schussler Creative, Inc.  Your June 15 correspondence falsely accusing our client of misappropriating rights you claim to own by virtue of having collected hot dog memorabilia has been forwarded to us by certain of our client's business partners to whom you sent it.

     Your deliberate publication of false and misleading statements to media organizations and companies in the hospitality industry defames Schussler Creative and Steve Schussler individually.  Your June 15 correspondence acknowledges your specific intent to damage Schussler Creative's reputation and business by "poisoning the well" for its restaurant business through unsolicited email correspondence sent to our client's business partners, media organizations and other hospitality companies.

     Unless we receive your immediate assurance that you will cease and desist from any defamatory statements regarding Schussler Creative, its principals or any of agents by 5:00 o'clock p.m. on Tuesday, June 26, 2007, we have recommended that our client authorize our firm to seek sanctions and all further relief as may be necessary to protect its valuable name, reputation and goodwill and to prevent further tortuous interference with our client's business and economic activities.

     I look forward to hearing from you.

               Sincerely,

               John W. Provo

JWP/cw
cc:    Doug Holod
       Schussler Creative

530266

EXHIBIT 4

-21-



P 612.672.8200
F 612.672.8397
www.maslon.com

3300 WELLS FARGO CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS, MINNESOTA
55402-4140

September 19, 2007

John W. Provo
Direct Phone: (612) 672-8331
Direct Fax: (612) 642-8331
*John.Provo@maslon.com*

SENT VIA ELECTRONIC MAIL AND CMRRR
Steven Bernier
1030 Whistler Drive
Suisun, CA 94585

Re:    HOT DOG HALL OF FAME Trademark

Dear Mr. Bernier:

This firm represents Schussler Creative, Inc., the owner of U.S. Trademark Application Serial No. 78/591560 for the "HOT DOG HALL OF FAME" trademark for restaurant services, retail store and wholesale distributorship services. Your e-mail correspondence addressed to Steve Schussler and sent to various media organizations and hospitality companies with which Schussler Creative has current or anticipated future economic relationships have been provided to us for consideration and response.

As the creator of some of the nation's most innovative restaurants, Schussler Creative has great respect for the intellectual property rights of others. After careful review and investigation, however, Schussler Creative cannot agree that you own any rights in the "HOT DOG HALL OF FAME" trademark.

It is well-settled law that trademark rights are established only through use for an actual product or service. Such use must be genuine for products or services offered to the public, and not a mere fantasy or ambition to launch a business at some future date. Similarly, mere self-promotion does not create such rights. Your website consists of personal journal entries and blog entries about cars, movie reviews, people, family members' library cards, etc., rather than a business. While no doubt of personal interest to you, these personal narratives about your hobbies and interests do not provide a legal basis for you to prevent others from pursuing commercial business endeavors.

Your claim ". . . that the concept, name, URL and good reputation of The Hot Dog Hall Of Fame is solely our intellectual property(s).[sic]" vastly overreaches any legitimate rights that you may have. As noted above, ownership rights derive from actual ". . . use [of a trademark] on a commercially realistic scale, in the ordinary course of trade," and not merely as an attempt to appropriate such rights for future use. Sporadic or casual use of a name also creates no enforceable rights. As your website indicates, you have assembled a personal collection of hot dog memorabilia as a hobby, and not as a business. A variety of media sources document the personal, noncommercial nature of your collection.

527926.1

Steven Bernier
September 19, 2007
Page 2



P 612.672.8200    3300 WELLS FARGO CENTER
F 612.672.8397    90 SOUTH SEVENTH STREET
                  MINNEAPOLIS, MINNESOTA
www.maslon.com    55402-4140

     Your correspondence also overlooks the fact that other organizations have and continue to use the slogan "Hot Dog Hall of Fame" for wiener eating contests, promotions and similar events, including the following businesses:

     1.    The Corner Bar, Rockford, Illinois, which maintains a "Hot Dog Hall of Fame" consisting of the names of over 5,000 participants in the bar's competitive eating event (see Exhibit A attached).

     2.    Vienna Beef Limited, Chicago, Illinois, which maintains a "Vienna Beef Hot Dog Hall of Fame" recognizing delicatessen operators that sell Vienna beef products (see Exhibit B attached).

     3.    Lancaster Jet Hawks, Lancaster, California, which offers induction into its "Wienie Wednesday Hot Dog Hall of Fame" to any customer who "buy(s) 15 hot dogs at one time (see Exhibit C attached).

     This is an important issue for our client. Your deliberate publication of false and misleading statements to media organizations and companies in the hospitality industry with whom Schussler Creative has either current or anticipated future economic relationships defames Schussler Creative and Steve Schussler individually. To start with, we have two demands:

     1.    Your immediate assurance that you will cease and desist sending defamatory statements regarding Schussler Creative or any of its principals or agents; and

     2.    Your apology and agreement to take responsibility for all such misrepresentations.

     I look forward to hearing from you.

               Sincerely,


               John W. Provo

JWP/cw
Enclosures

cc:    Doug Holod
       Steve Schussler

527926.1



**THE CORNER BAR**
**A ROCKFORD TRADITION**
*Food. Friends. Fun.*

**GIFT CARDS**
**MERCHANDISE**
**HOT DOG HALL OF FAME**
**OUR MENU**
**WHAT'S HAPPENING**
**CONTACT US**
**HISTORY**
**DAILY SPECIALS**
**LOCATION**

### Hot Dog Hall of Fame

The Corner Bar's Hot Dog Hall of Fame was established in 1968. Since then, more than 5,000 names have been added to the Hot Dog Hall of Fame. Our longest-reigning champion was Sharon VanDuinen who ate 42 ½ chili dogs in the four-hour time allotment in March 1982 - a record that stood for 23 years.

In December 2005, Balinda Gould gulped down 43 hot dogs to pass Sharon and be crowned our Amateur Champion. Then in March 2006, a number of competitors from the International Federation of Competitive Eating descended to take on what is perhaps the world's only chili-dog competition. Tim Janus beat out Joey Chestnut, Patrick Bertoletti and Hall Hunt to eat 43 1/2 dogs and become the reigning Professional Champion.

**Amateur Champion – Balinda Gould**

    

**Professional Champion – Tim Janus**

 



E-newsletter Signup    Email Address    Zip

**The Corner Bar - 31 N Main St - Rockford, MI 49341 - Restaurant 616.866.9866 - Catering**

©2007 Rockford Corner Bar
Site Design by Fluis, Inc. -- Site Developed by SLB Networks




STUDY 10 HOURS OF PLAYER PROFILES



WWW.REDDEVELOPMENT.COM       HOME       PARTNERS



## Hot Dog Hall of Fame

Hot Dog Hall of Fame serves up an amazing array of hot dogs, sausages, dumplings (pierogis, blintzes, kreplaches, raviolis, wontons, pot stickers), French fries (curly, straight fries, skin on, skin off, with mayonnaise, fries with vinegar), roasted in the husk corn on the cob, mustards (honey, brown, yellow, hot, spicy, horse radish), ketchups, pickles, relishes, horseradishes, olives, sauerkrauts, onions and peppers from all over the world.

Hot Dog Hall of Fame will serve only the Best of the Best. Only the finest meats, along with an unmatched selection of buns (toasted, sesame seed, poppy seed and more). Hot dogs and sausages will become the most sought after meal, thanks to the unmatched selection of top quality food on the menu.

Hot Dog Hall of Fame will be featured in a major theme park in Orlando and will then be licensed to stadiums, airports & universities all over the world. Hot Dog Hall of Fame will give credibility to simple foods cooked and presented with an extraordinary flare.

Hundreds of different mustards, ketchups, pickles, relishes, peppers and onions will be provided by the manufacturers. As strategic partners, they would benefit with shelf space and receive recognition via Hot Dog Hall of Fame's international advertising and marketing.

Hot Dog Hall of Fame locations will range in size, depending upon the venue (500 to 4,000 square feet with up to 150 seats).




EXHIBIT 5

**From:** Dave Claflin [mailto:dclaflin@reddevelopment.com]
**Sent:** Tuesday, September 18, 2007 1:47 PM
**To:** Steve Graham; Steve Schussler
**Subject:** FW: Again, We are The Hot Dog Hall Of Fame

---

**From:** Mr.HotDog [mailto:Mr.HotDog@Cox.Net]
**Sent:** Tuesday, September 18, 2007 11:18 AM
**To:** Dave Claflin
**Subject:** Again, We are The Hot Dog Hall Of Fame

Please be advised that **WE** are **The Hot Hog Hall Of Fame**, not that liar, thief and con man Steve Schussler.

We've been doing this since **1976** and he is attempting to steal our concept, good name, business name, URL's, etc.

We made the mistake of telling him about us at a meeting we had with him at the Grand Opening of the Fisherman's Wharf (San Francisco) Rainforest Cafe in **2000**.

We have also been talking to someone within his organization who tells us that he may not actually own another one of the concepts he's currently touting.

You can read all about it (we've already served him 2 Cease & Desist demand letters) on our web site:
www.thehotdoghalloffame.com

Go to **"About Us"** and select the hyperlink in the body of the text portion of that page for **"Hot Dogs In A Cold World"**.


**With Relish,**

**Uncle Frank**



-28-

**EXHIBIT 6**



Airbrush rendering by Joe Roche

**"HOT DOGS IN A COLD WORLD" - The Final Chapter?**

**16 June 2007**

**Dear fellow hot dog lovers, family, friends, contributors and supporters:**

As most of you know, we've been working on our book ("**Hot Dogs In A Cold World**") for at least the last 15 years now, from before we got our first PC in 1996. You've seen much of the material in various other forms, but mainly in our newsletter "**The Frankfurter Chronicles**" (who'd have ever thought that I could write about hot dogs for 11 plus years now?). The part that had eluded us all of this time was the ending, as none of us can see into the future...

We may now have that ending although it isn't anything we'd have ever imagined and it's certainly nothing that any of us, including you, our wonderful fellow hot dog lovers, family, friends, supporters and contributors, deserve.

Back in the Spring of 2000, we became aware of an up-and-coming phenomena: the **Rainforest Cafe**.

It combined spectacular design, state-of-the-art animatronics, first class marketing with mediocre, mostly frozen fare and people were spending hours waiting in line just to see the place. That wasn't the main appeal to us however; it was the man behind it all and his innovative way of making his point. **Steve Schussler**, the founder, had spent several hundred thousand dollars to convert his house into a working model of the chain he hoped to build.

For years, we had resisted doing the same in our house as I'm claustrophobic just to start with, we'd seen other of our friends go the same route and besides, who wants to be known as that weirdo who lives in a museum?

We emailed Mr. Schussler, telling him how much we respected his accomplishments, that we were a struggling Hall Of Fame and that we were looking for a partner to help bring it all to life. To our surprise, Mr. Schussler responded and we traded slightly over 60 emails in a couple of weeks, describing who we are and what we do.

Then he invited us to meet him at the **Grand Opening** of their new location at Fisherman's Wharf in San Francisco.

Needless to say, we were ecstatic (but after years of similar meetings, so far resulting in absolutely nothing, we were cautiously optimistic at best).

Around the same time, an old friend was just starting his new job at that Rainforest Cafe location, a likable guy who had once been our boss when the wife and I worked at Denny's.

I won't name him at this time but if we ever wind up in court, he did witness it all...

The day before the meeting, our son had come down with the flu and I got hit with it full force the morning of that meeting, but I was going anyway. How often do you get to meet a guy worth an estimated half a billion bucks (at the time) who also seems to appreciate what you do? I rented a car and drug myself to the meeting (...wild horses and all that...). When we got there, Mr. Schussler wasn't there and I sat around waiting almost an hour before he finally showed up. I spent much of that time talking to our friend who worked there and soon discovered that Mr. Schussler and several of his officers had taken off moments before I had arrived. When he finally showed up, he almost immediately brushed me off. He said he was going to build **The Hot Dog Hall Of Fame** himself; what does he need me for (then why am I even here)? I left, thinking it a huge waste of my time and what an arrogant little asshole...

A few weeks later, **Chris Masterson** in Seattle emailed to say he'd "Googled" us and that someone had set up several very similar web sites (www.hotdoghalloffame.com, www.hotdoghalloffame.net & www.hotdoghalloffame.org).

After a bit of research, we discovered it to be an employee of Mr. Schussler's chain of weenie stands in the Chicago area, **Gold Coast Hot Dogs**, and sent him a "Cease & Desist" demand letter (See **EXHIBIT A** below).

We also contacted **ICANN**, the internet governing body to protest these infringements and apparently, they eventually abandoned these names and it was all over, so we thought...

Over the years, we've had to defend a number of our business names and that's a nasty process and we were glad this problem had just went away.

**Fast Forward: 7 Years Later**

Last Saturday, I "Googled" **The Hot Dog Hall Of Fame** to see if I could find a link to an internet news agency that had done several features about us only to discover that Mr. Schussler was back at it again. He'd done interviews in several online and print publications, asserting it was he who had come up with the name, concept, URL's, etc and that he had the world's largest collection of hot dog stuff...

I should probably point out a couple of things here:

1) I don't think he has the World's largest collection as we've acquired this stuff since approximately **1977** (besides, that's not really important) as

2) there's a bit more to being a true Hall Of Fame than the collection (there are certain PUBLIC obligations, just to start with or have you overlooked that, Mr. Schussler?), and

3) there are at least a dozen other people out there seriously collecting hot dog stuff (just check out the hot dog action on Ebay).

4) One of the ideas he's touting, a veritable wall of mustards from around the world, is a "throw out" concept I gave him during our brief meeting, a tactic the CIA calls "disinformation", which we sometimes use to check someone's trust-worthiness (we've been seriously ripped off before and can show you several other examples of it on certain other web sites) and

5) we long ago donated all of our mustard stuff to the **Mount Horeb Mustard Museum** and they already have the "**Wall of Mustard**"...

Needless to say, after discovering that he was up to his same old tricks again, we emailed him another "Cease & Desist" (See EXHIBIT B below).

We also emailed everyone listed in the article as well as the publishers themselves to say that WE are The Hot Dog Hall Of Fame.

He emailed back, attempting to assert his right to the name, concept, URL's, etc and threatening to sue US...

Over the next few days, we talked to a number of lawyers and if we decide to go that route, it generally boils down to whose wallet is bigger. We've had a few days to think about it now and we've come to a decision: we can't possibly hope to prevail in the legal system as he's far more affluent than we are or ever really hope to be. Instead, we are going to "poison the well" so to speak. If he thinks he can steal from us, he has another thing coming. We didn't spend most of our lives doing this, at enormous expense to ourselves, just to roll over and play dead so he can walk right in and take whatever he wants.

After a quick look through our (print) files, we came up with literally hundreds of letters from the years we've been in The Hot Dog Hall Of Fame business. We had planned on adding several dozen of them to this web site but halfway through scanning them all, I saved them to an email message and will show them to anyone who hasn't watched us do what we do for the last 30 years or so..

A partial list:

A letter from The National Hot Dog & Sausage Council (1980)
A letter to the the Founder / President of the Doggy Diner chain (1981)
A letter from Edelman Public Relations (1981)
A "Cease & Desist" letter from our attorney, John Pope of San Jose (1982)
A letter to The McFly Restaurant Group (1983)
A letter to David Letterman's head writer (1983)
A letter from J Michael Zabkar, the Founder / President of Zab's White Hots in Rochester, New York (1983)
A letter to Nolan Bushnell, creator of Pong, Atari and Pizza Time Theater (1983)
A letter to "Evening Magazine" (1983)
A letter to "The San Francisco Chronicle (1983)
A letter from The Reagan White House (1983)
Several letters from KTEH Channel 54 (PBS) in San Jose (1983)
Another letter to "The San Francisco Chronicle" (1983)
A second letter from The Reagan White House (1983)
A letter from Donald Trump (1990)
A letter from The Clinton White House (1995)
Numerous mentions in Herb Caen's column in "The San Francisco Chronicle" (early 1990's)
A letter from author Michael Karl Witzel (1993)
A letter from mega producer Jeffrey Katzenberg and mega director Steven Spielberg (1995)
A letter to actor Bruce Willis (1996) and
Numerous letters from Center for the Arts in San Francisco's Yerba Buena Gardens (1996) from Hall Of Fame Hall Of Fame, a show featuring exhibits from 54 halls of fame all across the US.

Then there are the several hundred newspaper articles, radio spots, tv appearances and promotional stunts we've participated in over the years.

And I should probably point out that Mr. Schussler was approximately 14 years old in 1980 so I sincerely doubt he can stake any sort of claim that far back...

Then, every time he uses our name, concept, variants of our URL, etc, we will email these individuals the link to the site and point out that they are being conned by a one hit wonder (Rainforest Cafe really wasn't all that successful when you look under the financial hood) and that WE are The Hot Dog Hall Of Fame and have fulfilled all of the duties as The Hot Dog Hall Of Fame for almost 30 years now.

Essentially, he has placed us in the position of having **NOTHING** to lose now and we **WELCOME** him to sue us.

I'm old and have been sick (with numerous serious health issues) for the past 10 years now, I'm unemployed, I'm broke, I don't even have a car at the moment, much less own a house, the wife is only working 2 shifts a week as a part time waitress at a small, downscale, tourist cafe, we have no money, $7000 plus of credit card debt and neither of us are eligible for welfare, unemployment or Social Security. The only thing keeping us afloat is the fact that our son has been kind enough to loan us a truck and we couldn't even pay our rent without his (and the rest of the family's) help as it costs us twice as much to live here as it did up north, so I'm ready to stare him down to the bitter end (and I'm hoping he is dumb enough to have me arrested).

And talk about a real **David-vs-Goliath** scenario; the newspapers would love this story, especially if he's foolish enough to stay this course to disaster, legally harassing us after he's already stolen from us (and adding insult to injury)...

And, as many of you know, we had planned on leaving this wonderful collection to **The Smithsonian** should we fail to give it the home it deserves (they say they'd love to have it) but it could end up in crates in the basement so we're now thinking of giving it to a very well known restaurateur in New York City (and all attendant rights to the name, concept, URL's etc) so Mr. Schussler will have someone his own size to pick on (if he actually had the balls for it).

Anyone who knows us can also attest to the fact that we are meticulous record keepers as well (you have to be, with the nature of what we are doing, the business climate in general and our own personal finances, etc) but what Mr. Schussler may not be aware of is that we also saved the **60** some email messages we sent him (and his replies to them) and can prove what he knew and when he knew it.

We will produce them when and if he dares to drag us into court.

**With Relish,**

**Uncle Frank**

PS: And doesn't this also go to show what this concept is really worth, if a guy with that much to lose is willing to steal it from us and risk **everything** that he owns?

I mean, I'm kind of flattered, but...



**EXHIBIT A:**

**27 July 2000**

**Mr. James Rittenberg**
**State & Hubbard Corp.**
**5 W. Hubbard St.**
**Chicago, IL 60610**

**Dear Mr. Rittenberg:**

Apparently you are confused and do not realize that we plan to sue you and Mr. Schussler back into the stone age should this farce of an attempt to usurp our URL, our business concepts and our good name continue.

We know Mr. Schussler could stand to lose a few million one way or the other, but the question you must ask yourself is whether you can stand to lose everything you have worked for all of your life, Mr. Rittenberg.

Abandon the URL's, and the use of our name and our concept immediately or suffer the dire legal consequences.

We did not spend over half of our lives putting this together to roll over and play dead when someone takes a liking to our concept and name and decide to appropriate them for themselves, no matter how much money they may have.

I am, among many other things, a writer Mr. Rittenberg and have friends in high places in major newspapers all over the country (including The Chicago Sun Times). Would you like to see this story on the front page there (ask Dave Hoekstra if he knows Uncle Frank)?

And, having used and vigorously defended the name of The Hot Dog Hall Of Fame for over 20 years, you really don't have a prayer of prevailing, legally. If you insist in continuing this folly, be advised that we plan to first blacken both of your eyes (yours and Mr. Schussler's) professionally, first in the papers and on TV, then we will see you in court.

In this particular instance, we can not only prove what Mr. Schussler knew, but when he knew it.

For example, he registered (through your offices as an employee of a company he holds) these URL's after he had read our material (and before we had met in San Francisco, where he obviously forgot to tell us he was planning on stealing us blind).

By the time this is over, should you continue in this manner, we will be the owners of Gold Coast Hot Dogs and hopefully a substantial share of Rainforest Cafe and maybe even a house or two as well (both yours and Mr. Schussler's).

Is it really worth it to you, Mr. Rittenberg?

Are you going to follow Mr. Schussler into a fight neither of you can win and risk losing everything you have or will you do the right thing, abandon our concept, name and URL and walk away?

You have been warned.

The next time you will hear from us will be through our attorneys.

We won't have a bit of trouble finding a real mean lawyer when they realize how much money is in Mr. Schussler's pocket.

Can you afford the legal bills this may cost you?

Cease and Desist.

J Frank Webster
President
The Hot Dog Hall Of Fame
PO Box 658
Fairfield, Ca. 94533

The Hot Dog Hot Line
(707) 426-4618

PS: We have already contacted www.register.com and explained that we own the URL www.thehotdoghalloffame.com and that your registering the domain names you did is

A) too similar as to be confusing and essentially the same name and

B) done in Bad Faith as Mr. Schussler had received certain materials from us before that date (we have copies of all of our correspondence with Mr. Schussler to substantiate our position) and that he knew these concepts, names and URL's were our intellectual property.

You will also notice that this message has been sent to multiple addressees.

Some of them are stalwarts within the industry, and others are business writers or television people.

http://www.thehotdoghalloffame.com/page15.htm                                    10/4/2007

Several copies will follow this via regular mail and Registered Mail with Return Receipt Requested which hereby effectively constitutes legal delivery.

Again, we admonish you Mr. Rittenberg, Cease & Desist.



**EXHIBIT B:**

**10 June 2007**

**Dear Mr. Schussler:**

**CEASE & DESIST:**

This is the **SECOND** time we've had to advise you that the concept, name, URL and good reputation of **The Hot Dog Hall Of Fame** is solely our intellectual property(s).

To refresh your memory a bit: we met at the Fisherman's Wharf location of The Rainforest Cafe shortly after it opened.

You tried to buy our collection and then, when we mentioned our obligation to the hundreds of contributors that made our World Class collection possible, you told us that you were just going to take our concept.

Shortly after that meeting, we discovered that you had one of your minions from **Gold Coast Hot Dogs** register several versions of our URL.

We responded with a formal demand that you **Cease & Desist** at that time.

If your memory is a little hazy, we'd be glad to forward that letter to you and all of the addressees above.

However, if you'd like to eventually fund it all for US, just keep doing what you're doing and we'll turn the lawyers loose on you...

You have been warned, AGAIN!

**CEASE & DESIST**

**With Relish,**

**Uncle Frank**

PS: We've already contacted Host Marriott, Levy Restaurants, Success Magazine, The Hartford Courant, Rocky Mountain News, The Chicago Sun Times, The San Diego Union Tribune and Chain Leader Magazine.

-34-

**From:** Mayberry, Adam [mailto:amayberry@cityofsparks.us]
**Sent:** Tuesday, September 18, 2007 12:49 PM
**To:** Dave Claflin
**Cc:** Carey, Shaun
**Subject:** FW: Hello from The Hot Dog Hall Of Fame

Hi Dave - The Mayor received this message from the noted individual.

Just wanted to let you know about it. Let me know if you have any additional insight.

Adam

---

**From:** Mr.HotDog [mailto:Mr.HotDog@Cox.Net]
**Sent:** Tuesday, September 18, 2007 9:10 AM
**To:** Martini, Geno
**Cc:** Chris Masterson
**Subject:** Hello from The Hot Dog Hall Of Fame

18 September 2007

The Honorable Geno Martini
Mayor
Sparks, Nevada

Dear Mayor Martini:

Please be advised that WE are The Hot Hog Hall Of Fame, not that liar, thief and con man Steve Schussler.

We've been doing this since 1976 and he is attempting to steal our concept, good name, business name, URL's, etc.

We made the mistake of telling him about us at a meeting we had with him at the Grand Opening of the Fisherman's Wharf (San Francisco) Rainforest Cafe in 2000.

file://C:\Documents and Settings\jdarda\Local Settings\Temp\XPGrpWise\46F7D0E5MAS...  9/27/2007

EXHIBIT 7   -35-

We have also been talking to someone within his organization who tells us that he may not actually own another one of the concepts he's currently touting.

You can read all about it (we've already served him 2 Cease & Desist demand letters) on our web site: www.thehotdoghalloffame.com

Go to "About Us" and select the hyperlink in the body of the text portion of that page for "Hot Dogs In A Cold World".

In the near future, we plan to go VERY public with this situation and are letting your office know about it so that you will be properly prepared to deal with the fallout this will cause.

**With Relish,**

**Uncle Frank**

PS: Most of my wife's family is from Nevada and you may recognize some of their names (previous office holders, car dealership owners, etc).



www.thehotdoghalloffame.com

(Rev. 07/89).

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

STEVEN SCHUSSLER and SCHUSSLER CREATIVE, INC.

## DEFENDANTS

J. FRANK WEBSTER, aka "MR. HOT DOG," aka "UNCLE FRANK"

2007 OCT 18  AM 10: 36

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIF.

BY _____ DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Hennepin, MN
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
COTKIN & COLLINS
200 W. Santa Ana Boulevard
Suite 800
Santa Ana, CA 92701
(714) 835-2330

ATTORNEYS (IF KNOWN)

'07 CV 2 0 1 6 IEG    RJB FAX

## II. BASIS OF JURISDICTION  (PLACE AN 'X' IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [X] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION  (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. 1332

## V. NATURE OF SUIT  (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Medical Malpractice | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [X] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [X] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motion to Vacate Sentence | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **HABEAS CORPUS:** | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Conditions | | | |

## VI. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removal from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] YES  [ ] NO

## VIII. RELATED CASE(S) IF ANY  (See instructions):

JUDGE _____    Docket Number _____

DATE  10/17/07

SIGNATURE OF ATTORNEY OF RECORD  James P. Collins

#143669  $350  mo  10/18/07

:ODMA\PCDOCS\WORDPERFECT\22810\1 January 24, 2000 (3:10pm)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    (a) Plaintiffs - Defendants.  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)   County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)   Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   Jurisdiction.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2)  When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

III.  Residence (citizenship) of Principal Parties.  This section of the JS-44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV.   Cause of Action.  Report the civil statute directly related to the cause of action and give a brief description of the cause.

V.    Nature of Suit.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

VI.   Origin.  Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court.  (2)  Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3)  Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4)  Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6)  Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7)  Check this box for an appeal from a magistrate's decision.

VII. Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. Related Cases.  This section of the JS-44 is used to reference relating pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.

(rev. 07/89)

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 143669    — KD
* * C O P Y * *
October 18, 2007
10:39:09**

**Civ Fil Non—Pris**
USAO #.: 07CV2016
Judge..: IRMA E GONZALEZ
Amount.:                     $350.00 CK
Check#.: BC 20718


**Total—>  $350.00**


FROM: CIVIL FILING
      SCHUSSLER, ET AL V. WEBSTER