1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SCHUSSLER and SCHUSSLER CREATIVE, INC., et al., <br><br> Plaintiff, <br><br> vs. <br><br> J. FRANK WEBSTER, <br><br> Defendant. | CASE NO. 07cv2016 <br><br> ORDER GRANTING PRELIMINARY INJUNCTION <br><br> [Doc. No. 5.] |

Presently before the court is plaintiffs' motion for preliminary injunction. (Doc. No. 5.) For the following reasons, the motion is granted.

## BACKGROUND

**Factual Background**

Plaintiffs, Steven Schussler ("Schussler") and Schussler Creative, Inc. ("Schussler Creative"), bring this action for defamation, tortious interference with contract, and tortious interference with prospective economic advantage. Defendant is J. Frank Webster, also known as "Uncle Frank" and "Mr. Hot Dog." (First Amended Complaint, ("FAC") ¶¶ 3 & 5.) Plaintiff Schussler Creative owns the trademark application for the "Hot Dog Hall of Fame" service mark. (Id. ¶ 8 & Ex. 1.) Together with its business partner, RED Development, LLC, ("RED Development") Schussler Creative is developing a restaurant franchise called "Hot Dog Hall of Fame." (Id. ¶¶ 9-11.) Plaintiffs intend to open the first Hot Dog Hall of Fame in spring of 2008

in Kansas City and the second in Sparks, Nevada soon thereafter. (Id. ¶ 8.)

Plaintiffs allege defendant owns a personal collection of hot dog memorabilia. (Id. ¶ 4.) He maintains a website with an online newsletter at http://www.thehotdoghalloffame.com. (Id. ¶ 15.) Plaintiffs allege defendant began sending e-mails to various media organizations, hospitality companies, civic leaders, and RED Development in June and September of 2007 regarding the Hot Dog Hall of Fame. (Id. ¶¶ 12, 17-18.) Plaintiffs allege these e-mails contained defamatory statements regarding Mr. Schussler, including that Schussler stole the concept of Hot Dog Hall of Fame from defendant; Schussler does not own the intellectual property of the Hot Dog Hall of Fame; and Schussler is a "liar," a "thief," and a "con man." (Id. ¶¶ 11 & 14; Exs. 2, 5, 7.) Plaintiffs also allege defendant's e-mails reveal his intent to "poison the well" for Schussler (id. ¶ 15, Ex. 6) and "blacken" the "eyes" of Schussler and his counsel (id. ¶ 16 & Ex. 6).

As a result of defendant's e-mails, plaintiffs allege RED Development, other business associates, and city officials in Sparks, Nevada have expressed concern about plaintiffs' rights to the "Hot Dog Hall of Fame" concept and potential liability issues. (Schussler Declaration in support of Motion, ¶ 15.) RED Development has "refused to present Kansas City officials with proposed licensing agreements until this matter with WEBSTER is resolved." (Id.) Plaintiffs claim this may force them to default on a $20 million line of credit from RED Development, and would negatively affect their future business prospects. (Id.)

Defendant does not dispute he has waged an e-mail campaign against plaintiffs and their use of the name Hot Dog Hall of Fame. Defendant instead asserts he is the owner of all rights to the Hot Dog Hall of Fame concept. James Collins and David Schultz appeared on behalf of plaintiffs. Defendant appeared on his own behalf.

**Procedural Background**

Plaintiffs filed a complaint on October 18, 2007, alleging (1) defamation, (2) tortious interference with prospective economic advantage, and (3) tortious interference with contract. (Doc. No. 1.) Plaintiffs seek injunctive relief and a declaration that Schussler Creative owns the trademark application for Hot Dog Hall of Fame and has the right to use the name and concept. (Id. ¶¶ 40-45.) On October 30, 2007, plaintiffs applied for a temporary restraining order and

moved for a preliminary injunction. (Doc. No. 5.) On October 31, 2007, the court issued a temporary restraining order (TRO) requiring defendant not to (1) correspond with current or prospective business associates of plaintiffs, or post materials on a website, implying plaintiffs have stolen the intellectual property of Hot Dog Hall of Fame, or (2) send such communications to any person, business, corporation, city, municipality, or any representative of a city or municipality. (Doc. No. 7.)

The court also ordered defendant to show cause why the motion for preliminary injunction should not be granted. On November 13, 2007, the court held a hearing on the motion for preliminary injunction.

**DISCUSSION**

**Motion for Preliminary Injunction**

Legal Standard

A preliminary injunction is appropriate if the moving party establishes either (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) serious questions going to the merits of the case and the balance of hardships tips sharply in favor of the moving party. Stuhlbarg Intern. Sales Co. v. John D. Brush and Co., 240 F.3d 832, 839-840 (9th Cir. 2001). These are not two separate tests, but rather two points on a sliding scale in which the required showing of harm varies inversely with the required showing of meritoriousness. Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003) ("These two alternatives represent 'extremes of a single continuum,' rather than two separate tests.") (citation omitted). Courts have also traditionally considered the advancement of the public interest when granting a preliminary injunction. Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995). In any situation, the court must find there is some threat of an immediate irreparable injury, even if that injury is not of great magnitude. Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc., 762 F.2d 1374, 1376 (9th Cir. 1985).

The factual determinations made by the court when granting or denying preliminary injunctive relief, and the legal conclusions drawn from them, are not final adjudications on the merits; rather, the court "need only find probabilities that the necessary facts can be proved."

1  Sierra On-Line, Inc. v. Phoenix Software, 739 F.2d 1415, 1423 (9th Cir. 1984). Finally, pursuant
2  to Rule 65, no preliminary injunction may issue without a security posted by the applicant in an
3  amount determined by the Court as sufficient to protect the interests of the enjoined party. See
4  Fed. R. Civ. P. 65(c).

5        Preliminary injunctions can be appropriate in cases where tortious interference with
6  contract is alleged. See, e.g., Robi v. Five Platters, Inc., 918 F.2d 1439 (9th Cir. 1990) (upholding
7  a preliminary injunction enjoining defendant from continuing to intentionally interfere with its
8  former band member's contractual relationships by sending letters claiming plaintiff did not have
9  the right to perform under the name "The Platters.").

10 Analysis

11 **I.    Success on the merits**

12       Plaintiffs have established a likelihood of success on the merits of their claims for tortious
13 interference with contract and tortious interference with prospective economic advantage.
14 Plaintiffs do not address their claim of defamation in their motion for preliminary injunction.

15       To establish intentional interference with contract, plaintiffs must show (1) plaintiff had a
16 valid contract, (2) defendant had knowledge of the contract and intended to disrupt it, (3) the
17 disruption occurred, and (4) damage resulted. Pacific Gas & Electric Co. v. Bear Stearns & Co.,
18 791 P.2d 587, 589 (Cal. 1990). Instead of relating to an existing contract, the elements of
19 intentional interference with prospective economic advantage relate to a prospective business
20 relationship, and require wrongful conduct by the defendant beyond mere interference. Della
21 Penna v. Toyota Motor Sales, Inc., 11 Cal. 4th 376, 393 (Cal. 1995).

22       Plaintiffs have submitted unrebutted evidence establishing the elements of both of these
23 torts. First, plaintiff had a valid contract with RED Development to develop restaurant concepts,
24 including Hot Dog Hall of Fame. (Schussler Decl. ¶ 15.) Defendant learned of this relationship by
25 reading a news article about plaintiffs. (Memorandum in support of motion at 14; Ex. 6 (providing
26 defendant's on-line newsletter, in which defendant explains that he discovered plaintiffs' projects
27 in on-line news articles and responded by "email[ing] everyone listed in the article as well as the
28 publishers themselves.")) Defendant sent an e-mail to RED Development accusing plaintiffs of

not owning the intellectual property for the Hot Dog Hall of Fame, and this disrupted plaintiffs' contract with RED Development. (Id.) Defendant intended to disrupt plaintiffs' business. (Memo. ISO Motion at 7.) One of his e-mails (Memo. ISO Motion, Ex. 8), stated he plans to "poison the well" by contacting plaintiffs' business partners and media organizations. Another threatened to "blacken" the "eyes" of Schussler and his lawyer, "first in the papers and on TV" and then to "see [them] in court." (Memo. ISO Motion Ex. 6.)

Plaintiffs also allege their prospective relations with the City of Sparks, Nevada have been disrupted by defendant's conduct. Plaintiffs have a valid expectancy of a business relationship with the city as they expect to open their second Hot Dog Hall of Fame there, in a mall partially funded by the city. Defendant wrote to the mayor of Sparks and accused plaintiffs of not owning the intellectual property to Hot Dog Hall of Fame, which unsettled the city officials, and has disrupted plaintiffs' expectations of opening the restaurant there. (Memo. ISO Motion at 14, Exs. 6 & 7.) Accordingly, plaintiffs have demonstrated a likelihood of success on the merits of their claims for tortious interference with contract and tortious interference with prospective economic advantage.

## II.    Irreparable Harm

Plaintiffs argue defendant's e-mails have caused and will continue to cause irreparable harm because (1) damage to reputation is intangible, (2) potential damages are difficult or impossible to quantify, (3) the structure of plaintiffs' industry makes reputation particularly valuable, and (4) e-mail communications are easily forwarded, causing irreparable damage in short periods of time.

Schussler's declaration in support of the motion underscores the importance of reputation in his industry. He states that he and his company have previously enjoyed an excellent reputation, and expresses his serious concern that defendant will harm that reputation irreparably if he continues to send his e-mails. One of defendant's e-mails states he intends to "poison the well" against plaintiffs, indicating his desire to harm their reputation.

Plaintiffs also argue lost profits from a new project will be difficult to quantify, making the legal remedy of damages inadequate. Plaintiffs state that threats of litigation are particularly

disruptive in their industry because plaintiffs' restaurants are given "tenant allowances" which are funded by cities. (Schussler Decl. ¶¶ 15-19.) Because defendant has chosen to communicate by e-mail, damages are immediate and irreparable. In fact, one of defendant's e-mails was forwarded to plaintiffs by a third party recipient. (Memo. ISO Motion at 19; Ex. 7.) Plaintiffs argue defendant has indicated his intent to continue his campaign by writing "I'm ready to stare [Schussler] down to the bitter end," and "he has placed us in the position of having NOTHING to lose." (Memo. ISO Motion at 20, Ex. 6.) Schussler states defendant contacted the press "as recently as October 10." (Schussler Decl. ¶ 15.)

Plaintiffs allege defendant will not suffer any harm as a result of the preliminary injunction, since his activities, collecting memorabilia and writing an on-line newsletter, are non-commercial and the injunction will only prevent him from falsely accusing plaintiffs of theft of intellectual property. Plaintiffs note that should defendant seek to develop his activities commercially, the injunction will not affect his ability to lawfully compete. Defendant argues the balance of hardship favors him because he is unable to afford counsel. He asks that he should not be prohibited from telling the media his side of the story since plaintiffs are telling their side. He also states there is a greater likelihood of irreparable damage to him if plaintiffs prevail because the suit affects thirty years of his life's work.[1]

The court agrees that if defendant continues to send e-mails stating plaintiffs do not own the intellectual property of Hot Dog Hall of Fame, plaintiffs will likely suffer irreparable damage to their reputation. Cf. Rent-A-Center, Inc. v. Canyon Television & Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991). Plaintiffs have also shown the opening of the restaurant will be delayed or abandoned entirely if defendant continues to send such e-mails, causing large damages of an uncertain amount. Thus, plaintiffs have demonstrated a likelihood of irreparable harm.

## CONCLUSION

**IT IS THEREFORE ORDERED** that plaintiffs' application for a preliminary injunction

---

[1] During oral argument, defendant described his plan to open a museum called the "Hot Dog Hall of Fame" which will showcase his collection of memorabilia and include a restaurant. If plaintiffs are able to open their restaurant, using the name "Hot Dog Hall of Fame," defendant argues he will not be able to raise the $2 million or more needed to launch his museum.

1  is GRANTED.  Defendant WEBSTER and his officers, agents, employees, independent
2  contractors, or other persons acting under his supervision or control or at their request are enjoined
3  from sending e-mails, letters, or other correspondence to current or prospective business associates
4  of plaintiffs, or making verbal statements to such persons, or posting materials on a website, which
5  state or imply that plaintiffs have stolen, misappropriated, or infringed upon intellectual property
6  allegedly belonging to defendant relating to the Hot Dog Hall of Fame.

7  The injunction is conditioned upon plaintiffs' maintenance of a bond in the amount of
8  $5,000 pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

9  **IT IS SO ORDERED**

10 **DATED:  November 15, 2007**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**