# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SCHUSSLER and SCHUSSLER CREATIVE, INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>J. FRANK WEBSTER,<br><br>Defendant. | CASE NO. 07cv2016 IEG (AGB)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; (Doc. No. 32)**<br><br>**(2) DENYING PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION; (Doc. No. 32)**<br><br>**(3) DENYING DEFENDANT'S REQUEST FOR APPOINTMENT OF COUNSEL; and**<br><br>**(4) ENTERNG PARTIAL DECLARATORY JUDGMENT.** |

Presently before the Court are a motion for summary judgment and a motion for permanent injunction filed by plaintiffs Steven Schussler and Schussler Creative, Inc. Defendant has requested appointment of counsel. For the following reasons, the Court (1) grants plaintiffs' motion for summary judgment in part, (2) denies plaintiffs' motion for summary judgment in part, (3) denies plaintiffs' motion for preliminary injunction, (4) denies defendant's request for appointment of counsel, and (5) enters a partial declaratory judgment.

//

# BACKGROUND

**Factual Background**

Plaintiffs bring this action for defamation, tortious interference with contract, and tortious interference with prospective economic advantage. Plaintiffs also seek a declaration that Schussler Creative owns the trademark for "Hot Dog Hall of Fame."

Defendant is J. Frank Webster, also known as "Uncle Frank" and "Mr. Hot Dog." Defendant owns a large collection of hot dog memorabilia which he has been collecting since the 1970's. He maintains a website with an online newsletter at www.thehotdoghalloffame.com. The last hot dog restaurant he operated closed in 1983. He has never sought or received money in connection with his activities on his website or with the memorabilia collection, although he considers it more than a hobby. It is his eventual plan to open a museum showcasing the collection with an on-site restaurant and other hot-dog related activities.

Plaintiffs develop concepts for themed restaurants. Plaintiffs' previous projects include the "Rainforest Café" and "T-Rex." In 2005, Schussler Creative filed a trademark application for the mark "Hot Dog Hall of Fame." Together with its business partner, RED Development, LLC, ("RED Development") Schussler Creative is developing a restaurant franchise called "Hot Dog Hall of Fame." The first "Hot Dog Hall of Fame" opened on August 13, 2008, at the Mohegan Sun Casino at Pocano Downs, Wilkes-Barre, Pennsylvania.

In June of 2007, defendant sent e-mails to various media organizations, hospitality companies, civic leaders, and RED Development regarding plaintiffs' plan to open the Hot Dog Hall of Fame restaurants. In the e-mails, defendant claimed Mr. Schussler stole the concept of Hot Dog Hall of Fame from defendant; plaintiffs do not own the intellectual property of the Hot Dog Hall of Fame; and Mr. Schussler was a "liar," a "thief," and a "con man." Defendant also stated he would "poison the well" for Mr. Schussler and "blacken" the "eyes" of Mr. Schussler and his counsel.

**Procedural Background**

Plaintiffs filed a complaint on October 18, 2007, alleging (1) defamation, (2) tortious interference with prospective economic advantage, and (3) tortious interference with contract.

(Doc. No. 1.) Plaintiffs also seek permanent injunctive relief and a declaration that Schussler Creative owns the trademark for Hot Dog Hall of Fame and has the right to use the name for its restaurants. On November 15, 2007, the Court preliminarily enjoined defendant from "sending e-mails, letters, or other correspondence to current or prospective business associates of plaintiffs, or making verbal statements to such persons, or posting materials on a website, which state or imply that plaintiffs have stolen, misappropriated, or infringed upon intellectual property allegedly belonging to defendant relating to the Hot Dog Hall of Fame." (11/15/2007 Order at 7.)

On June 27, 2008, plaintiffs filed a motion for summary judgment and a motion for a permanent injunction. (Doc. No. 32.) Defendant has filed a response. (Doc. No. 36.) Plaintiffs have filed a reply (Doc. No. 37) and a supplemental affidavit (Doc. No. 38). The Court heard oral argument on August 18, 2008. David Schultz of the Maslon firm appeared for plaintiffs and defendant appeared on his own behalf.

On August 19, 2008 the Court ordered defendant to supplement the record with copies of e-mail correspondence between defendant and Mr. Schussler in 2000. (Doc. No. 41.) Defendant submitted those e-mails on August 28, 2008. (Doc. No. 43.) The Court granted plaintiffs leave to file a response, which was filed September 8, 2008. (Doc. No. 46.)

## DISCUSSION

### Legal Standard

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact is a question the trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Summary judgment may be granted in favor of a moving party on an ultimate issue of fact where the moving party carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; see Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000).

1    The moving party bears "the initial responsibility of informing the district court of the basis
2    for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the moving party must
3    demonstrate that no genuine issue of material fact exists for trial. Id. at 322. However, the
4    moving party is not required to negate those portions of the non-moving party's claim on which
5    the non-moving party bears the burden of proof. Id. at 323. To withstand a motion for summary
6    judgment, the non-movant must then show that there are genuine factual issues which can only be
7    resolved by the trier of fact. Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 738 (9th Cir.
8    2000) (citing Fed. R. Civ. P. 56; Celotex, 477 U.S. at 323). The nonmoving party may not rely on
9    the pleadings but must present specific facts creating a genuine issue of material fact. Nissan
10   Fire, 210 F.3d at 1103. The inferences to be drawn from the facts must be viewed in a light most
11   favorable to the party opposing the motion, but conclusory allegations as to ultimate facts are not
12   adequate to defeat summary judgment. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1180
13   (9th Cir. 2002). The Court is not required "to scour the record in search of a genuine issue of
14   triable fact," Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review
15   to the documents submitted for purposes of summary judgment and those parts of the record
16   specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030
17   (9th Cir. 2001).

**I.    Plaintiffs' Motion for Summary Judgment**

    **A.    Plaintiffs' Claim for Declaratory Judgment of Trademark Rights**

Plaintiffs seek a declaratory judgment as to their claim that Schussler Creative has a valid trademark for the mark "Hot Dog Hall of Fame."[1] Because Schussler Creative has registered the trademark, it is presumed valid. Defendant can rebut the presumption of validity if he used the trademark in commerce prior to Schussler's registration of the mark. See Brookfield Comm., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1047 (9th Cir. 1999). The Court must evaluate the "totality of the circumstances" to determine whether defendant used the mark in commerce:

> In applying this approach, the district courts should be guided in their consideration of non-sales activities by factors we have discussed, such as the genuineness and

---

[1] The Court has jurisdiction over this action under the Declaratory Judgment Act because there is a case or controversy between the parties. 28 U.S.C. § 2201.

>commercial character of the activity, the determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark, the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the service, the degree of ongoing activity of the holder to conduct the business using the mark, the amount of business transacted, and other similar factors which might distinguish whether a service has actually been "rendered in commerce."

Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1157-59 (9th Cir. 2001) (emphasis added).

    2.    Defendant's Uses of the Mark "The Hot Dog Hall of Fame"

Defendant has been using "The Hot Dog Hall of Fame" to describe his activities for approximately thirty years. Defendant's relevant uses of the mark are: (1) registration of the domain name "hotdoghalloffame.com"; (2) maintenance of an on-line store on the website; (3) display of memorabilia at a restaurant in 1983; (4) other miscellaneous activities; and (5) intent to commercially exploit the mark in the future. Plaintiff argues, and the Court agrees, these uses are not sufficiently commercial when viewed individually and in their entirety.

First, mere registration of a domain name does not constitute use in commerce. Brookfield, 174 F.3d at 1051; Acad. of Motion Picture Arts and Sciences v. Network Solutions, Inc., 989 F. Supp. 1276, 1281 (C.D. Cal. 1997). Importantly, defendant intentionally made his website difficult to access by the public and never generated or attempted to generate any revenues from the website, including advertising revenues. See Defendant's Deposition at 110-11 (stating the newsletter is "invitation . . . only" and "the website has never been listed with any of the search engines or anything like that. We don't have links to any other website. It's strictly people that want to see the thing and that's it.").

Second, defendant added a "store" to his website after the commencement of this lawsuit. At his deposition, defendant testified this was "because evidently that's what you attorneys seem to think is critical here. So, fine, I will sell stuff." (Defendant's Deposition at 125.) Because defendant started this activity after plaintiffs registered the trademark, this activity is not "prior" use. See Brookfield, 174 F.2d at 1047.[2]

---

[2] The store is also insufficient because defendant has not actually made any sales and courts disregard "sham sales" made to avoid the "in commerce" requirement. See Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1157-59 (9th Cir. 2001).

1    Third, defendant used the mark on the wall of a restaurant called "Hot Diggity Dogs" for
2 approximately six months in 1983. This does not constitute "continuous" commercial use up until
3 the registration of the mark by Schussler Creative in 2005, and any trademark rights acquired in
4 1983 have been abandoned. See L.A. Gear, Inc. v. E.S. Originals, Inc., 859 F. Supp. 1294, 1299
5 (C.D. Cal. 1994) (noting trademarks must be used continuously in order to remain valid);
6 Silverman v. C.B.X., Inc., 870 F.2d 40, 47-48 (2d Cir. 1989) (explaining employment of marks in
7 minor activities, such as non-commercial uses, is not sufficient to negate abandonment).

8    Fourth, defendant's miscellaneous activities have not included any commercial component.
9 Defendant has also held bar-be-cues for his friends and supporters, at which he distributed
10 "Frankie Awards" for "hot dog excellence." He has advised individuals beginning hot dog
11 businesses and attended "grand openings" in costume. He displayed a portion of the collection at
12 a "Hall of Fame Hall of Fame" in San Francisco in 1996. He has distributed newsletters to his
13 friends and supporters containing hot dog related news and jokes. He has never sought or received
14 payment in connection with these activities, and they are not legally relevant to an evaluation of
15 defendant's trademark rights.

16    Finally, the Court considers defendant's "plan to make money" by eventually opening up a
17 museum to showcase his collection and a restaurant to support that collection. An intent to
18 eventually commercially exploit an idea is not sufficient to confer trademark rights or meet the "in
19 commerce" requirement. Brookfield, 174 F.3d at 1052 ("[T]rademark rights are not conveyed
20 through mere intent to use a mark commercially."); Chance, 242 F.3d at 1157 ("Mere adoption of
21 a mark without bona fide use, in an attempt to reserve it for the future, does not create trademark
22 rights.").

23    3.    Conclusion

24    Viewing the evidence in the light most favorable to defendant as the non-moving party and
25 considering the totality of defendant's uses of the mark, the Court finds defendant did not use the
26 mark in a sufficiently "commercial" manner to create an enforceable trademark right. Accordingly,
27 the Court grants plaintiffs' motion for summary judgment as to the claim for a declaratory
28 judgment of trademark rights. The Court declares defendant has no trademark right in his use of

"The Hot Dog Hall of Fame." Defendant's use of that name does not invalidate Schussler Creative's trademark for "Hot Dog Hall of Fame."

### B.  Plaintiffs' Claim for Defamation

Plaintiffs also argue the Court should grant summary judgment on their claim for defamation. Defendant sent e-mails to plaintiffs' business partners, the industry press, and city officials in Sparks, Nevada, where plaintiffs intended to open one of the first "Hot Dog Hall of Fame" restaurants. One e-mail includes the following statements:

- "Please be advised that WE are The Hot Dog Hall of Fame, not that liar, thief and con man Steve Schussler."
- "We've been doing this since 1976 and he is attempting to steal our concept, good name, business name, URL's, etc."
- "We have also been talking to someone within his organization who tells us that he may not actually own another one of the concepts he's currently touting."

(Plaintiff's Exhibit 11 at 119-20.) In his response, defendant continues to assert that the concept for the Hot Dog Hall of Fame is his and plaintiffs stole his concept and his intellectual property.

Analysis

a.  Undisputed Elements

Defamation "involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." Smith v. Maldonado, 72 Cal. App 4th 637, 646 (Cal. Ct. App. 1999); Cal. Civil Code §§ 45-47. Several elements of plaintiffs' defamation claim are undisputed. First, defendant intentionally published the statements to others by e-mail and web posting. Second, the statements have a natural tendency to injure. See Barnes-Hind, Inc. v. Allergan Pharms, Inc., 226 Cal. Rptr. 354, 356 (Cal. Ct. App. 1986) ("If [] a reader would perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence and common sense, then there is a libel per se."); Smith v. Airborne Freight Co., No. 95-1299 SI, 1996 WL 207760 at *2 n.2 (N.D. Cal. Apr. 19, 1996) (calling someone a "thief" has a natural tendency to injure his or her reputation). Third, defendant's statements do not appear to be privileged.[3] The Court finds is it undisputed that: (1) defendant

---

[3]Defendant's actions are not protected by the absolute privileges defined in California Civil Code Section 47, which relate to official duties and governmental proceedings. Defendant's communications are also not subject to the qualified privilege of Section 47(c), which applies to

intentionally published these communications to others; (2) the communications were not privileged; and (3) the statements had a natural tendency to injure the plaintiffs.

        b.      <u>Dispute as to the Truth of the Statements</u>

Truth is an absolute defense to a defamation claim, and defendant has the "burden of proof with respect to the issue of truth or falsity." <u>Lipman v. Brisbane Elem. Sch. Dist.</u>, 55 Cal. 2d 224, 233 (1961). "Libel . . . overlooks minor inaccuracies and concentrates upon substantial truth. . . . It is sufficient if the substance of the charge be proven true, irrespective of slight inaccuracy in the details. Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the libelous charge be justified." <u>Hughes v. Hughes</u>, 122 Cal. App. 4th 931, 936 (Cal. Ct. App. 2004) (quoting <u>Masson v. New Yorker Magazine</u>, 501 U.S. 496 (1991), (additional citations omitted)). Under <u>Hughes</u>, if an allegedly false statement "can reasonably be understood to mean" something true, then the jury must determine "how the statement should be understood." <u>Id.</u> at 936-37. "Also, the issue of whether a statement is true or substantially true is normally considered to be a factual one." <u>Id.</u> at 937.[4]

Defendant's allegedly libelous statements assert Mr. Schussler "is attempting to steal [defendant's] concept." Plaintiffs have sufficiently established that defendant does not have a valid trademark to this concept. The statements, however, are reasonably susceptible of the meaning that Mr. Schussler got the idea for "Hot Dog Hall of Fame" from defendant. Plaintiffs, in focusing on whether or not defendant actually has any <u>legally protectible</u> property interest in his

---

communications made "without malice, to a person interested therein." Defendant's good faith belief in the truth of his statements does satisfy the "without malice" element. <u>See</u> Cal. Civil Code § 48a(4)(d) ("Actual malice is that state of mind arising from hatred or ill will toward the plaintiff; provided, however, that such a state of mind occasioned by a good faith belief on the part of the defendant in the truth of the libelous publication or broadcast at the time it is published shall not constitute actual malice."); <u>Frommoethelydo v. Fire Ins. Exchange</u>, 42 Cal. 3d 208, 217 (Cal. 1986) (discussing malice and Section 48a(d)(4)'s definition). Several recipients of defendant's communications, however, did not have a previous relationship with the defendant, so it does not appear his communications were made "to a person interested therein." <u>Mann v. Quality Old Time Svc., Inc.</u>, 120 Cal. App. 4th 90, 109 (Cal. Ct. App. 2004) (holding customers of defendant's business competitor were not persons "interested therein" and qualified privilege did not apply).

[4]In <u>Hughes</u>, the court affirmed the trial court's admission of evidence that defendants' father, the plaintiff, once engaged in pimping to prove the truth of the gist of defendants' statement the father "is a pimp," despite their concession plaintiff no longer acted as a pimp. 122 Cal. App. 4th at 937.

1  use of the mark "Hot Dog Hall of Fame," view the "gist" or "sting" of defendant's statements too
2  narrowly.[5]

3  It is apparent from defendant's deposition, which the plaintiffs cite as evidence in support
4  of their motion, and from each of his filings in this Court that defendant believes in the truth of the
5  statements he made. Defendant's e-mails and web postings also reflect his claim that plaintiffs
6  took the idea from him. (See Plaintiff's Exhibit 7 (providing e-mail in which defendant tells Mr.
7  Schussler that when they met in person, "you told us that you were just going to take our
8  concept"); Plaintiff's Exhibit 9 (providing e-mail in which defendant details the history of his
9  relationship with Mr. Schussler and their meeting in 2000); Plaintiff's Exhibit 10 (providing
10 posting on defendant's website setting out the e-mail which is Plaintiff's Exhibit 9).) Pursuant to
11 the Court's order, defendant submitted the e-mails he sent to Mr. Schussler. These e-mails
12 identified "The Hot Dog Hall of Fame" as defendant's idea and the contours of the idea.
13 (Defendant's Response to Order at 87-92 (setting forth e-mail to Mr. Schussler on June 11, 2000 at
14 2:00 PM in which defendant discusses other uses of the name "Hot Dog Hall of Fame" and
15 explains "[w]e have used the name 'The Hot Dog Hall of Fame' nationally and (in the media) for
16 22 years now and they certainly have no claim to it."). In response, plaintiffs note that their
17 restaurant does not contain many of the elements of the idea and that Mr. Schussler has filed a
18 declaration that he came up with the name "approximately ten years ago," before receiving the
19 letter from defendant. (Schussler Decl. at 10.)

20 The Court will not assume Mr. Schussler is credible for purposes of the motion for
21 summary judgment, given the circumstantial evidence supporting the reasonable inference that Mr.
22 Schussler selected the Hot Dog Hall of Fame name after being contacted by defendant. "The
23 evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

---

25 [5]Plaintiffs also argue the Court should accept the falsity of the statement that Mr. Schussler
26 "may not actually own another one of the concepts he's currently touting." Although defendant now
   believes he may have been given incorrect information on that point, the overall "gist" or "sting" of
27 his statements, which primarily related to the "Hot Dog Hall of Fame" concept, may nonetheless be
   true. It is for the jury to decide the overall gist of the statements and whether they were substantially
28 true. Moreover, even if the Court finds the single statement regarding Mr. Schussler's "other concept"
   to be false, the Court is not able to determine on this record what damages plaintiffs incurred as a
   result.

1  favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The jury could of course
2  accept Mr. Schussler's representation that he thought of the name approximately ten years ago.
3  But the jury could also question that representation in light of defendant's use of the mark since
4  the early 1980's, defendant's letter and e-mails to Mr. Schussler explaining his concept in the
5  spring of 2000, and the timing of Schussler Creative's trademark application in 2005. The Court
6  must also accept defendant's representation that Mr. Schussler never stated he had independently
7  selected the "Hot Dog Hall of Fame" name at any time during their communications, and that Mr.
8  Schussler orally told defendant he was taking defendant's concept during their in-person meeting
9  at the Rainforest Café.[6] Defendant's case does not appear to be strong. However, construing these
10 facts in the light most favorable to defendant as the non-moving party, the Court finds a reasonable
11 jury could find Mr. Schussler actually took defendant's idea and thus the "gist" of his e-mails was
12 true. The Court finds the truth of defendant's allegedly libelous statements is a disputed issue of
13 fact which precludes summary judgment as to this claim.

### C. **Plaintiffs' Claims of Tortious Interference**

Plaintiffs also argue they are entitled to summary judgment on their claims for tortious interference with contract and tortious interference with prospective economic relations.

The elements of intentional interference with contractual relations are: (1) plaintiff had a valid contract, (2) defendant had knowledge of the contract and intended to disrupt it, (3) the disruption occurred, and (4) damage resulted. Pacific Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1119 (1990). Instead of relating to an existing contract, the elements of intentional interference with prospective economic advantage relate to a prospective business relationship, and require wrongful conduct by the defendant beyond mere interference. Della Penna v. Toyota Motor Sales, Inc., 11 Cal. 4th 376, 393 (1995).

### 1. Undisputed Elements

It is undisputed that plaintiffs have valid contracts and business expectations with the

---

[6] The Court excuses defendant's failure to make these representations under penalty of perjury because he is pro se. The representations are in line with the statements defendant made under penalty of perjury at his deposition. E.g., Rand v. Rowland, 145 F.3d 952, 958 (9th Cir. 1998) ("[P]ro se litigants . . . must be ensured meaningful access to the courts. Consequently, we tolerate informalities from civil pro se litigants.").

1  targets of defendant's e-mails and that defendant chose to send the e-mails in order to disrupt those
2  relationships.[7]  The facts before the Court also suggest such a disruption occurred, as Red
3  Development asked plaintiffs to resolve the dispute with defendant prior to moving forward with
4  restaurant openings.  Accordingly, plaintiffs have shown three of the four elements of their claim
5  for tortious interference with contract.

6        2.     <u>Disputed Elements</u>

7         Plaintiffs assert they have been damaged by expending time, money, and resources
8  responding to inquiries and assuring their business associates of their right to use this concept,
9  although plaintiffs have not provided evidence of any amount of damage.  (<u>See</u> Memo. ISO
10 Motion at 21.)  Plaintiffs also claim damages in the amount of the legal fees incurred in
11 prosecuting this litigation.  However, plaintiffs have not cited any authority supporting their
12 argument that attorneys fees should be awarded in this case or that attorneys fees are properly
13 recoverable as damages for this tort.  Accordingly, the Court denies summary judgment as to this
14 claim.

15        Plaintiffs argue they also have shown defendant's conduct was defamatory and establishes
16 the "independently wrongful" element of tortious interference with prospective economic
17 advantage.  Because the Court denies summary judgment as to defamation, the Court also denies
18 summary judgment as to plaintiffs' claim for tortious inference with prospective business
19 advantage.

20 **II.     Plaintiffs' Motion for Permanent Injunction**

21        Plaintiffs also seek a permanent injunction.  Because plaintiffs have not prevailed on their
22 defamation claim, a permanent injunction enjoining future defamation is premature.  The

---

[7]Defendant sought out some of the many subjects of his e-mails based on their business associations with plaintiffs, indicating his knowledge that they have a contract or a prospective business relation. (Plaintiff's Ex. 10 (providing defendant's on-line newsletter, in which defendant explains that he discovered plaintiffs' projects in on-line news articles and responded by "email[ing] everyone listed in the article as well as the publishers themselves."))  Defendant sent these contacts e-mails accusing plaintiffs of not owning the intellectual property for the Hot Dog Hall of Fame, and this disrupted their existing or future business relations. (<u>Id.</u>)  Defendant's stated purpose is to disrupt plaintiffs' business.  One of his e-mails (Plaintiff's Ex. 9 at 110), states he plans to "poison the well" by contacting plaintiffs' business partners and media organizations.  Another threatens to "blacken" the "eyes" of Schussler and his lawyer, "first in the papers and on TV" and then to "see [them] in court."  (Plaintiff's Ex. 10 at 116.)

preliminary injunction entered on November 15, 2007 remains in full force and effect.

### III.     Defendant's Request for Appointment of Counsel

In responding to plaintiffs' motion for summary judgment, defendant requested the Court to appoint counsel for him because he is "unable to properly represent myself due to a number of factors such as poor eyesight, declining health and the relatively recent inability to entertain complex thoughts longer than a simple sentence or two." (Defendant's Response at 1.)  Defendant also asserts financial difficulties, as the lawsuit has "enable[d] Plaintiff to drain my resources (we recently filed for Food Stamps and will be filing our bankruptcy papers soon, thanks to Plaintiff's reckless actions)." (Id. at 3.)

Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." See Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997) (explaining that appointment of counsel for indigent civil litigants is appropriate in "exceptional circumstances").  While defendant makes several references to his deteriorating financial condition in the papers, defendant has not made a showing of indigence.

Defendant must also show "extraordinary circumstances" justifying the appointment of counsel. Id.  "A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the [unrepresented party] to articulate his claims pro se in light of the complexity of the legal issues involved." Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991) (quoting Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986)) (other internal quotations omitted). In this case, it is clear that defendant cannot prevail on plaintiffs' trademark claim. Although his case is not strong, defendant may succeed in defending himself on the claim for defamation. He has been able to sufficiently articulate his position as to the truth of his statements thus far in the proceedings. Accordingly, the Court denies defendant's request for the appointment of counsel without prejudice.

### CONCLUSION

For the foregoing reasons, the Court: (1) GRANTS plaintiffs' motion for summary judgment as to plaintiffs' claim for a declaration of trademark rights; (2) DENIES plaintiffs' motion for summary judgment as to plaintiffs' claims of defamation, tortious interference with

contract, and tortious interference with prospective business relations; (3) DENIES the motion for permanent injunction, but continues the preliminary injunction through the completion of the case; (4) DENIES defendant's request for appointment of counsel without prejudice, and (5) ENTERS a declaratory judgment as to plaintiffs' trademark claim as set forth in this Order.

Magistrate Judge Battaglia has scheduled a Case Management Conference for September 29, 2008 at 9:00 AM.  At that time, the parties should discuss whether plaintiffs wish to proceed on their remaining claims.

**IT IS SO ORDERED.**

**DATED:  September 22, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**