1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 | STEVEN SCHUSSLER and SCHUSSLER CREATIVE, INC., et al.,

12                               Plaintiffs,

13

14    vs.

15

16

17 | J. FRANK WEBSTER,

18                               Defendant.

19

CASE NO. 07cv2016 IEG (AGB)

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO VACATE ORDER; (Doc. No. 60)**

**(2) ENTERING AMENDED DECLARATORY JUDGMENT; and**

**(3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION. (Doc. No. 58)**

20
21
22
23
24

      Presently before the Court are defendant's motion to vacate the Court's September 22, 2008 Order, and plaintiffs' motion for permanent injunction.  For the reasons stated herein, the Court: (1) grants defendant's motion to vacate in part; (2) denies defendant's motion to vacate in part; (3) enters an amended declaratory judgment in favor of plaintiffs; (4) grants plaintiffs' motion for permanent injunction in part; and (5) denies plaintiffs' motion for permanent injunction in part.

25

*///*

26

*///*

27

*///*

28

**BACKGROUND**

**Factual Background**

Plaintiffs bring this action for defamation, tortious interference with contract, and tortious interference with prospective economic advantage.  Plaintiffs develop concepts for themed restaurants; their previous projects include the "Rainforest Café" and "T-Rex."  In 2005, Schussler Creative filed a trademark application for the mark "Hot Dog Hall of Fame."  Together with its business partner, RED Development, LLC, ("RED Development") Schussler Creative is developing a restaurant franchise called "Hot Dog Hall of Fame."  The first "Hot Dog Hall of Fame" opened on August 13, 2008, at the Mohegan Sun Casino at Pocano Downs, Wilkes-Barre, Pennsylvania.

Defendant is J. Frank Webster, also known as "Uncle Frank" and "Mr. Hot Dog." Defendant owns a large collection of hot dog memorabilia which he has been collecting since the 1970's.  He maintains a website with an online newsletter at www.thehotdoghalloffame.com. The last hot dog restaurant he operated closed in 1983.  He has never sought or received money in connection with his activities on his website or with the memorabilia collection, although he considers it more than a hobby.  It is his eventual plan to open a museum showcasing the collection with an on-site restaurant and other hot-dog related activities.

In June of 2007, defendant sent e-mails to various media organizations, hospitality companies, civic leaders, and RED Development regarding plaintiffs' plan to open the Hot Dog Hall of Fame restaurants.  In the e-mails, defendant claimed Mr. Schussler stole the concept of Hot Dog Hall of Fame from him; plaintiffs do not own the intellectual property of the Hot Dog Hall of Fame; and Mr. Schussler was a "liar," a "thief," and a "con man."  Defendant also stated he would "poison the well" for Mr. Schussler and "blacken" the "eyes" of Mr. Schussler and his counsel.

**Procedural Background**

Plaintiffs filed a complaint on October 18, 2007, alleging (1) defamation, (2) tortious interference with prospective economic advantage, and (3) tortious interference with contract. (Doc. No. 1.)  On November 15, 2007, the Court preliminarily enjoined defendant from "sending e-mails, letters, or other correspondence to current or prospective business associates of plaintiffs,

or making verbal statements to such persons, or posting materials on a website, which state or imply that plaintiffs have stolen, misappropriated, or infringed upon intellectual property allegedly belonging to defendant relating to the Hot Dog Hall of Fame." (11/15/2007 Order at 7.)  The preliminary injunction is in effect until the conclusion of this litigation.

On June 27, 2008, plaintiffs filed a motion for summary judgment and for a permanent injunction of defendant's "tortious and defamatory behavior."  (Doc. No. 32.)  On September 22, 2008, the Court issued an Order ("Order") granting in part and denying in part the motion for summary judgment, and denying the motion for permanent injunction. (Doc. No. 47.)  The Court found that "[b]ecause Schussler Creative has registered the trademark, it is presumed valid." (Order at 4.)  The Court granted plaintiffs' motion for summary judgment as to the claim for trademark rights, and entered a declaratory judgment that defendant had no trademark right in his use of "The Hot Dog Hall of Fame" and that defendant's use of that name "did not invalidate Schussler Creative's trademark for 'Hot Dog Hall of Fame." (Order at 6-7.) The Order denied plaintiffs' motion for summary judgment on their defamation and tortious interference claims.

On January 14, 2009 plaintiffs moved for a permanent injunction asking the Court to preclude defendant from publishing statements that claim, insinuate, or imply that plaintiffs: (a) do not own or are not entitled to use the phrases "The Hot Dog Hall of Fame" or "Hot Dog Hall of Fame"; or (b) stole or otherwise misappropriated trademark rights from defendant. (Doc. No. 58.) Defendant has filed an opposition, (Doc. No. 65,) and plaintiffs filed a reply.  (Doc. No. 66.)  On January 26, 2009 defendant moved to vacate the Order under Fed. R. Civ. P. 60(b).  (Doc. No. 60.) Plaintiffs filed an opposition (Doc. No. 64,) and defendant has filed a reply.  (Doc. No. 67.)

**DISCUSSION**

I.     Defendant's Motions to Vacate September 22, 2008 Order

Federal Rule of Civil Procedure 60(b) provides, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding," for a variety of reasons.  Fed. R. Civ. P. 60(b) (2009).  Defendant moves the Court for an order vacating in part the Order pursuant to either Fed. R. Civ. P. 60(b)(1), 60(b)(3), or 60(b)(6), primarily because plaintiffs allegedly made false statements of fact and law that "induced" the Court to erroneously

issue the declaratory judgment in plaintiffs' favor.  The alleged misrepresentations are set forth

below, followed by a discussion of whether relief is warranted under Fed. R. Civ. P. 60(b).

A)       Misrepresentations of Fact

Defendant argues that contrary to plaintiffs' representations in their pleadings, plaintiffs *do*

*not* own a registered trademark in the name "Hot Dog Hall of Fame," and do not even own the

trademark *application* for that name.  Defendant also states that regardless of who owns the

trademark application, no trademark has ever been issued on the name.  Defendant supports his

argument with the declaration of Michael A. Febbo.  Mr. Febbo's declaration details reports from

the United States Patent and Trademark Office ("PTO") website regarding trademark applications

for the "Hot Dog Hall of Fame," and attaches those reports as exhibits.[1]  His declaration and the

attached exhibits indicate:

> (a)       Schussler Creative filed a trademark/service mark application for "Hot Dog Hall of Fame" on March 21, 2005 with an application serial number of 78591560 ("'560 application.") The PTO mailed a "final refusal" of the statement of use for the application on November 19, 2008.  As of January 21, 2009, no trademark had been issued on the '560 application.

> (b)       The application was assigned to an entity called "Creative Attractions, LLC" on November 30, 2007, and the assignment was recorded on December 11, 2007.

(Febbo Decl. ISO Mot. to Vacate, ¶¶ 5-12.)

Plaintiffs argue they fully and accurately disclosed the assignment of the application to

"their affiliate" Creative Attractions, LLC ("Creative Attractions") as well as the status of their

trademark application.  With regard to ownership of the trademark application, plaintiffs affirm

that Schussler Creative assigned its rights in the '560 application to Creative Attractions on

November 30, 2007.  (Schussler Decl. ISO Opp. to Mot. to Vacate, ¶ 3.)  Plaintiffs explain

Schussler Creative is a fifty percent owner of Creative Attractions through its wholly-owned

subsidiary, Creative Holdings, LLC ("Creative Holdings").  (Id., ¶ 2.)  Plaintiffs state that under

Creative Attractions' Member Control Agreement, Schussler Creative, Steven Schussler, and

Creative Holdings are required to indemnify Creative Attractions for claims involving its assets.

---

[1] Mr. Febbo's declaration also discusses two other trademark applications regarding the "Hot Dog Hall of Fame." The Court does not discuss them here because the fraud allegation centers on plaintiffs' representations regarding the '560 application in their summary judgment motion.

(Id., ¶ 4.)  Plaintiffs claim that they were "required" to continue the instant litigation on Creative

Attractions' behalf even after the trademark application was assigned.  (Id.)  Plaintiffs maintain

that their summary judgment motion clearly disclosed the fact that the trademark application had

been assigned to Creative Attractions.

      With regard to the status of the trademark registration,[2] plaintiffs argue that although no

certificate of registration has issued for the '560 application, they expect the registration "in due

course."  (Opp. to Motion to Vacate at 8.)  On October 18, 2005 the PTO preliminarily determined

the '560 application for the "Hot Dog Hall of Fame" mark was entitled to trademark protection, a

notice of publication issued on November 30, 2005[3] and the application was published for

opposition on December 20, 2005. [Provo Decl. ISO Opp. to Motion to Vacate, ("Provo Decl.,") ¶

3, Ex. 3.] No opposition having been filed, the PTO issued a notice of allowance[4] on March 14,

2006.  (Id., ¶ 4, Ex. 4.)  Plaintiffs argue this notice of allowance meant "that the initial examination

has been completed, that the [PTO] has determined the mark to be registerable . . . and registration

will issue assuming the applicant files the necessary statement of use."[5]  (Opp. at 3.)  Mr.

---

      [2] The '560 application is an "intent to use" application filed under 15 U.S.C. § 1051(b) (2009). (Provo Decl., ¶ 2., Ex. 1.)  Section 1051(b) provides: "(1) A person who has a bona fide intention . . . to use a trademark in commerce may request registration of its trademark . . . by paying the prescribed fee and filing in the [PTO] an application and a verified statement . . . . (3) The statement shall be verified by the applicant and specify . . .(B) the applicant's bona fide intention to use the mark in commerce. . . ."

      [3] 15 U.S.C. § 1062(a) (2009) provides, "[u]pon the filing of an application for registration . . . the Director shall refer the application to the examiner in charge of the registration of marks, who shall cause an examination to be made and, if on such examination it shall appear that the applicant . . . would be entitled to registration upon the acceptance of the statement of use required by[15 USCS § 1051(d)], the Director shall cause the mark to be published in the Official Gazette of the Patent and Trademark Office."  15 USCS § 1051(d) is cited in relevant part in footnote 5, *infra*.

      [4] 15 U.S.C. § 1063(b) (2009) provides, "[u]nless registration is successfully opposed . . . (2) a notice of allowance shall be issued to the applicant if the applicant applied for registration under[15 USCS § 1051(b)]."

      [5] 15 U.S.C. § 1051(d) (2009) provides, "[w]ithin six months after the date on which the notice of allowance with respect to a mark is issued under [15 USCS § 1063(b)(2)] . . . the applicant shall file in the [PTO], together with such number of specimens or facsimiles of the mark as used in commerce as may be required . . . a verified statement that the mark is in use in commerce and specifying the date of the applicant's first use of the mark in commerce and those goods or services specified in the notice of allowance on or in connection with which the mark is used in commerce. Subject to examination and acceptance of the statement of use, the mark shall be registered in the [PTO], a certificate of registration shall be issued for those goods or services recited in the statement

1   Schussler and later, Creative Attractions, received several extensions on the filing date for the

2   statement of use. (Id. at 5.)  On September 23, 2008, Creative Attractions filed its statement of use

3   for the mark.  (Provo Decl., ¶7, Ex. 8.)  On September 29, 2008, the PTO "accepted the statement

4   of use and specimens in class 43"[6] but refused the statement of use "regarding the specimens

5   submitted in class 35."  (Id., ¶7, Ex. 9.)  Creative Attractions resubmitted the class 35 specimens,

6   and the PTO rejected that submission on November 18, 2008, requesting in a "final" office action

7   that Creative Attractions submit a substitute specimen and supporting statement on or before May

8   18, 2009.  (Id., ¶8, Ex. 11.)  On January 30, 2009, Creative Attractions submitted a request to

9   divide the application so that the class 43 mark could proceed to registration while the class 35

10  mark was being evaluated.  (Id., ¶11, Ex. 12.)  In a supplemental declaration, plaintiffs submitted a

11  status report indicating the divisional processing of the class 43 specimens occurred on February 5,

12  2009 under application serial number 78980937, the PTO completed  final review of that

13  application, and as of February 10, 2009, the application would "register in due course."

14  (Markinson Supp. Decl. ISO Opp., Ex. 1.)

15          Plaintiffs further argue they never misrepresented to the Court that they owned a *registered*

16  *trademark* as opposed to strictly a trademark *application*.  For example, plaintiffs cite to language

17  in their complaint which states "Schussler Creative is the owner of the U.S. Trademark

18  *Application* Serial No. 78/591560 for the 'HOT DOG HALL OF FAME' trademark for restaurant

19  services, retail store and wholesale distributorship services."  (Compl.,¶ 8.) (emphasis added).

20  Plaintiffs argue that although paragraph 13 of the Complaint states that Schussler Creative owned

21  the '560 *trademark* and not merely the *application*, that paragraph cited to exhibits indicating

22  Schussler Creative was the owner of the application, and thus the Complaint accurately disclosed

23  plaintiffs' ownership interest in the application.  Plaintiffs also cite to their statement of facts in

24  support of their summary judgment motion indicating the '560 application would be approved

25  pending demonstration of "actual use in commerce."  (Stmt. of Facts ISO Mot. Summ. J. at 18-19

26  _____

27  of use for which the mark is entitled to registration. . . ."

28      [6]  The '560 application sought to register the word mark "Hot Dog Hall of Fame" in
    International classes 43 (restaurant services) and 35 (retail store and wholesale distributorship
    services) pursuant to 15 U.S.C. § 1051(b) (2009).  (Provo Decl., ¶ 2., Ex. 1.)

n. 7.)

### B)   Misrepresentations of Law

Defendant also argues that plaintiffs misrepresented a dispositive legal standard in their summary judgment motion.  Plaintiffs stated in that motion, "Mr. Webster–as a non-registrant–may rebut the presumption of validity only by demonstrating that he was the first to use the mark *in commerce* and that he has used the mark *in commerce* continuously since the date of his first use."  (Plts.' Memo. ISO Mot. for Summ. J. at 4) (emphasis in original).  Plaintiffs cited Brookfield Comm., Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1047 (9th Cir. 1999) in support of this assertion.  Defendant argues plaintiffs misled the Court because they did not explain the burden-shifting described in Brookfield applied only to "inherently distinctive marks." Brookfield, 174 F.3d at 1047 n.9.  Defendant states this omission was misleading because in this case there has been no agreement that "Hot Dog Hall of Fame" is an inherently distinctive mark, and had the Court known the correct legal test it "clearly and convincingly" would have provided him with the chance to show that the mark is "merely descriptive."

### C)   Relief Under Fed. R. Civ. P. 60(b)

A motion under Fed. R. Civ. P. 60(b) is addressed to the Court's sound discretion and will not be reversed absent an abuse of discretion.  Civic Ctr. Square v. Ford (In re Roxford Foods), 12 F.3d 875, 879 (9th Cir. 1993).  Defendant first argues the Order should be vacated under Fed. R. Civ. P. 60(b)(3), which states that the Court may relieve a party of a "final judgment, order, or proceeding" by reason of "fraud . . ., misrepresentation, or other misconduct of an adverse party." Fed. R. Civ. P. 60(b)(3) (2009).  To prevail under Rule 60(b)(3), the moving party must establish by clear and convincing evidence that a judgment was obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case.  Casey v. Albertson's Inc., 362 F.3d 1254, 1260 (9th Cir. 2004).  The fraud "must not be discover-able by due diligence before or during the proceedings."  Id.  "Fraud upon the court," a narrower concept, embraces only fraud which attempts to, "defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."  In re

1   Intermagnetics America, Inc., 926 F.2d 912, 916 (9th Cir. 1991) (citation omitted).

2   The facts submitted by the parties indicate that plaintiffs *do not* own the '560 patent

3   application, and that *no registered trademark has been issued* to date for the mark "Hot Dog Hall

4   of Fame."  As an initial matter, the Court finds that plaintiffs' assignment of the '560 application

5   to Creative Attractions does not warrant relief under *any* provision of Rule 60(b) because the

6   assignment does not materially affect the Court's review of its summary judgment decision.  The

7   Court also finds that plaintiffs made inconsistent statements that led the Court to erroneously

8   conclude they had a registered trademark.  However,  the Court cannot conclude that plaintiffs

9   defrauded the Court because documents showing the true ownership and status of the '560

10  application were attached to plaintiffs' motion for summary judgment.  Similarly, defendant is not

11  entitled to relief under Rule 60(b)(3) due to plaintiff's alleged misrepresentation of law because

12  the applicability of Brookfield could have been determined through due diligence by defendant or

13  the Court before or during the proceedings.

14  Defendant alternatively argues he is entitled to relief under Rule 60(b)(1), which states that

15  the Court may relieve a party from a judgment by reason of "mistake, inadvertence, surprise, or

16  excusable neglect[.]"  Fed. R. Civ. P. 60(b)(1) (2009).  Rule 60(b)(1) provides such relief from a

17  judgment on motion made within a year after entry.  Kingvision Pay-Per-View v. Lake Alice Bar,

18  168 F.3d 347, 350 (9th Cir. Cal. 1999).  A court may also correct its own error of law under Rule

19  60(b)(1).  See Id. (citing Liberty Mut. Ins. Co. v. Equal Employment Opportunity Comm., 691 F.2d

20  438, 441 (9th Cir. 1982)).[7]

21  In the Order, the Court entered judgment finding: (1) "defendant has no trademark right in

22  his use of the 'Hot Dog Hall of Fame;'" and (2) "[d]efendant's use of that name does not

23  invalidate Schussler Creative's trademark for "Hot Dog Hall of Fame."  (Order at 6-7.)  In support

24  _____

25  [7] Defendant also argues that his lack of the legal knowledge required to competently oppose the summary judgment motion constitute "mistake, inadvertence, or excusable neglect" warranting relief under Rule 60(b)(1).  Generally, "neither ignorance nor carelessness on the part of the litigant

26  or his attorney provide [adequate] grounds for relief under Rule 60(b)(1)."  Engleson v. Burlington N. R.R., 972 F.2d 1038, 1043 (9th Cir. 1992).  Even though defendant was proceeding *pro se* when

27  he opposed the summary judgment motion, defendant's arguments and cited authority do not persuade the Court that *pro se* party is entitled to relief under Rule 60(b)(1) because he lacked the training to

28  properly defend his case on the merits. The Court DENIES defendant's motion for relief under Rule 60(b)(1) based on his own "mistake, inadvertence, or excusable neglect."

of judgment the Court reasoned that "[b]ecause Schussler Creative has registered the trademark, it is presumed valid," and found that defendant could not rebut that presumption because he did not use the mark in a sufficiently "commercial" manner.  (Order at 6.)  This decision was partially in error.   In the Ninth Circuit, a registered trademark constitutes "prima facie evidence of the validity of a registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration." Brookfield Comm., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1047 (9th Cir. 1999); Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996).  Here, although plaintiffs argue they have a registered trademark "for all intents and purposes," they still *do not have a registered trademark*.  The presumption of validity therefore does not apply.  See Glow Indus., Inc. v. Lopez, 252 F. Supp. 3d 962, 976 (C.D. Cal. 2002) (finding that a party with an "imminent" trademark registration still could not avail itself of the presumption that it owned and had the right to use the disputed trademark).

Absent the registered trademark presumption, trademark rights are determined under common law.  Id. at 976.  At common law, the existence and extent of trademark protection for a particular term depends on the term's inherent distinctiveness.  Blinded Veterans Ass'n v. Blinded American Veterans Foundation, 872 F.2d 1035, 1039 (D.C. Cir. 1989).  There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful.  Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005). An unregistered mark, such as "Hot Dog Hall of Fame,"  "is distinctive and is capable of being protected if it either (1) is inherently distinctive [suggestive, arbitrary, or fanciful] or (2) [is descriptive, but] has acquired distinctiveness through secondary meaning."[8] Kendall-Jackson Winery v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 (9th Cir. 1998).  Ownership of a distinctive mark is then determined through priority of commercial use.  See, e.g., CreAgri, Inc. v. USANA Health Scis., Inc., 474 F.3d 626, 630 n. 9 (9th Cir.) (explaining that before examining priority of use in a trademark infringement claim, the Court assumed the mark was eligible for protection–i.e. it was inherently distinctive or had acquired inherent distinctiveness through secondary meaning).

---

[8]  "Secondary Meaning" means that purchasers singularly associate the mark with the party claiming rights to the mark.  Dept of Parks & Rec. v. Bazaar Del Mundo, Inc., 448 F.3d 1118, 1128 (9th Cir. Cal. 2006).

Plaintiffs have not shown they have a protectable trademark interest in "Hot Dog Hall of Fame" because the mark is unregistered and they made no showing on summary judgment that the mark was: (1) inherently distinctive, or (2) descriptive, but distinctive through secondary meaning. Kendall-Jackson, 150 F.3d at1047. Plaintiffs also did not make the required showing of use of the mark in commerce in their summary judgment motion. Sengoku, 96 F.3d at 1219. ("[i]t is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.") The Court therefore vacates its prior decision that "[d]efendant's use of [the name 'Hot Dog Hall of Fame'] does not invalidate Schussler Creative's trademark for 'Hot Dog Hall of Fame,'" because plaintiffs in fact have not established trademark rights in the name.

The parties also dispute whether the Court's erroneous application of law warrants defendant's relief from the Court's declaratory judgment that defendant had "no trademark right in his use of 'The Hot Dog Hall of Fame.'" (Order at 6.) Plaintiffs argue that regardless of the validity of their own trademark rights to "Hot Dog Hall of Fame," they are entitled to a declaratory judgment that *defendant* has no rights to the mark because on summary judgment defendant failed to show the requisite priority of commercial use. Defendant asserts that only "inherently distinctive" marks are governed by a priority of use analysis, citing Brookfield, 174 F.3d 1036 at1047 ("a fundamental tenet of trademark law is that ownership of an inherently distinctive mark . . .is governed by priority of use.") He argues "descriptive" marks, which are not inherently distinctive, are only protectable by proof of secondary meaning. Defendant therefore argues the Court must determine whether or not "Hot Dog Hall of Fame" is inherently distinctive before determining he has no trademark rights due to lack of prior commercial use.

Defendant is correct that a descriptive mark must be shown to have secondary meaning to eligible for protection. Kendall-Jackson, 150 F.3d at1047. However, he is incorrect in stating that *only* "inherently distinctive" marks are governed by the priority of use requirement for three reasons. First, the user of any distinctive mark (including a descriptive mark with secondary

meaning) must also show priority of use in order to prove priority of a trademark right.  <u>CreAgri</u>, 474 F.3d at 630 n. 9; <u>see also</u> 1 Anne Gilson Lalonde, Gilson on Trademarks § 3.03[2][b] (2008) ("The owner of a trademark which is not inherently distinctive, which requires proof of secondary meaning as prerequisite to legal protection, has a more strict priority requirement [than the owner of an inherently distinctive mark].  He must prove not only that he adopted and used his mark [in commerce] first but also that it attained secondary meaning prior to the adoption and use of the confusingly similar mark.")  Second, the plain language of <u>Brookfield</u>, a case cited by defendant, *does not* restrict the applicability of the priority of use rule to inherently distinctive marks; it merely states the rule is *applicable* to inherently distinctive marks.  Third, defendant has no protectable trademark interest regardless of the distinctiveness of the mark.  If the mark *is not* distinctive, it is not eligible for protection, and neither plaintiffs nor defendant have a trademark right.  If the mark *is* distinctive, the prior commercial use rule applies, and the Court has already found, based on undisputed facts that over the course of thirty years defendant "did not use the mark in a sufficiently 'commercial' manner to create an enforceable trademark right."  (Order at 5-6.)  Thus, the Court's determination that defendant did not establish the relevant commercial use to establish trademark rights is sound, and its decision that defendant has "no trademark right in his use of 'The Hot Dog Hall of Fame'" remains in place.[9]

II.    <u>Plaintiffs' Motion for Permanent Injunction</u>

Plaintiffs have moved the Court for a permanent injunction consistent with the declaratory judgment Order.

A)    <u>Legal Standard</u>

To obtain a permanent injunction, a moving party must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would

---

[9]  Defendant has alternatively moved for relief under Rule 60(b)(6).  The motion is  DENIED because defendant's asserted grounds for relief are not materially distinguishable from those he offered in support of his Rule 60(b)(1) and (b)(3) motions.  A motion brought under 60(b)(6) must be based on grounds other than those listed in the preceding clauses of Rule 60(b).  <u>Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.</u>, 791 F.2d 1334, 1338 (9th Cir. 1986).

1    not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388,

2    391 (2006). The considerations with respect to a permanent injunction are substantially similar to

3    those applicable to a preliminary injunction, except that to obtain a permanent injunction, the

4    plaintiff actually must have succeeded on the merits.  Sierra Club v. Penfold, 857 F.2d 1307, 1318

5    (9th Cir. 1988). Whether to grant or deny a request for a permanent injunction is within a court's

6    equitable discretion. eBay, 547 U.S. at 391.

7           B)      Success on the Merits

8           There are two grounds upon which plaintiffs request injunctive relief.  First, they request

9    that the Court enjoin defendant from publishing statements claiming plaintiffs do not own or are

10   not entitled to use the phrases "The Hot Dog Hall of Fame" or "Hot Dog Hall of Fame."  As

11   discussed supra, plaintiffs have not established they own or are exclusively entitled to use those

12   phrases, and thus have not shown success on the merits.  Accordingly, the Court denies the motion

13   based on this ground.

14          Second, plaintiffs request that the Court enjoin defendant from making statements that

15   plaintiffs stole or misappropriated trademark rights from defendant.  Defendant argues the truth of

16   his allegedly libelous statements is a disputed issue of fact that was reserved for trial by the

17   Court's summary judgment Order, and that plaintiffs have thus not demonstrated success on the

18   merits.[10]

19          Even though it is a disputed issue of fact whether plaintiffs stole defendant's general idea,

20   it is not disputed that plaintiffs stole defendant's trademark rights, because as a matter of law

21   defendant has no trademark rights.  Plaintiffs' request for injunctive relief is consistent with the

22   Court's finding that defendant has no protectable trademark right to the "Hot Dog Hall of Fame."

23   The Court finds that plaintiffs have demonstrated success on the merits with respect to this request.

24          C)      Irreparable Harm

25          To establish irreparable harm a party must demonstrate that but for the grant of equitable

26   relief, there is a substantial likelihood that the party will suffer an injury 'for which a monetary

27

28          [10]  In the Order, the Court concluded "a reasonable jury could find that Mr. Schussler actually
     took defendant's idea and thus the "gist" of his emails was true."  (Order at 10.)

- 12 -

award cannot be adequate compensation.'" LaGuardia Assocs. v. Holiday Hospitality Franchising, Inc., 92 F. Supp. 2d 119, 130 (E.D.N.Y. 2000) (quoting Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37 (2d Cir. 1995).

Plaintiffs do not present any new evidence or supporting documentation in support of their argument that they have suffered and will suffer irreparable harm absent the requested injunctive relief.  Plaintiffs simply refer to their "previous filings" in support of their argument and mention that plaintiffs' statements have delayed restaurant openings and threatened Schussler Creative's reputation.  Defendant argues plaintiffs have not shown irreparable harm because they have not attached any evidence to their motion and simply make a general reference to "prior pleadings" for support.  Defendant cites no authority which precludes the Court from referring to prior pleadings to determine irreparable harm.

The Court finds that the same bases for irreparable harm that supported the preliminary injunction also support the granting of the permanent injunction.  The Court previously found that if defendant continued to send e-mails about the disputed intellectual property interests, "plaintiffs will likely suffer irreparable damage to their reputation."  (Prel. Inj. Order at 6.)  See Rent-A-Center, Inc. v. Canyon Television & Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (reputational damage can constitute irreparable harm).  The Court based its finding on the facts, supported by sworn declarations and exhibits that: (1) plaintiffs' reputation is very important in their industry; (2) plaintiffs had previously enjoyed a good reputation and plaintiffs were concerned that defendant's emails would harm that reputation irreparably; (3) e-mails are easily forwarded, causing irreparable damage over a short period of time, and one of defendant's emails was in fact forwarded to plaintiffs by a third-party recipient; (4) defendant intended to "poison the well" against plaintiffs and stated he was "ready to stare [Schussler] down to the bitter end," indicating his desire to harm their reputation.  (Prel. Inj. Order at 6.)  Here, plaintiffs' reputational interests continue to exist, and communications by defendant indicating plaintiffs stole his trademark rights could similarly damage those interests.

D)      Inadequate Legal Remedy

"Injunctive relief is proper only if monetary damages or other legal remedies will not

1    compensate the plaintiffs for their injuries." <u>Walters v. Reno</u>, 145 F.3d 1032, 1048 (9th Cir.

2    1998).  In other words, mere economic injury will not support a request for injunctive relief.

3    <u>Rent-A-Center</u>, 944 F.2d at 603.  Damage based on reputation is an intangible injury that is

4    difficult to valuate, <u>id.</u>, and is the main source of plaintiffs' likely irreparable harm.  Plaintiffs also

5    point out that to the extent any injury is compensable by damages, defendant's insolvency "renders

6    any money award worthless."  (Reply at 3.)  The Court therefore finds that plaintiffs do not have

7    an adequate remedy at law for their injuries.

8         E)    <u>Balance of Hardships</u>

9         Plaintiffs argue defendant will suffer no hardship if the Court grants the permanent

10   injunction because the only effect would be to prevent defendant from making statements that

11   would contravene the Court's declaratory judgment.  Plaintiffs argue that if the Court does not

12   grant the injunction they will continue to suffer hardship because defendant has indicated that he

13   will continue his efforts to communicate with the public about plaintiffs allegedly stealing his

14   intellectual property rights.  Plaintiffs also argue that absent an injunction they will be forced to

15   file additional lawsuits against defendant if he continues to issue statements that contradict the

16   Court's declaratory judgment.  Defendant argues the balance of hardships tips in his favor because

17   he has devoted much of his life to the "Hot Dog Hall of Fame" and a permanent injunction would

18   preclude him from discussing his rights relating to his business efforts and from achieving his

19   dream of opening a museum and retail outlet.

20        However, the balance of hardships tips in favor of granting equitable relief to plaintiffs.

21   An injunction does not preclude defendant from discussing his business efforts, as he contends,

22   because the equitable relief plaintiffs seek is very narrow.  Plaintiffs merely request that the Court

23   enjoin defendant from publishing statements that plaintiffs stole his *trademark rights*.

24        F)    <u>Public Interest</u>

25        In order to obtain a permanent injunction, a party must also show that injunctive relief

26   would not disserve the public interest.  <u>N. Cheyenne Tribe v. Norton</u>, 503 F.3d 836, 843 (9th Cir.

27   2007).  Plaintiffs argue the public interest would not be disserved by entry of a permanent

28   injunction because the Court has already found defendant's statements that plaintiffs stole his

trademark rights to be untrue.  Plaintiffs argue the public will not benefit if they are forced to bring a lawsuit against defendant every time he publishes a statement that contradicts the Court's declaratory judgment.  Defendant argues the public interest would be disserved by a permanent injunction because he would be precluded from opening his own "Hot Dog Hall of Fame" museum and making thirty years of his life's work available for free to the public.

Defendant's argument is without merit; an injunction precluding defendant from publishing statements that plaintiffs stole his trademark rights, in and of itself, does *not* preclude defendant from opening a museum or retail outlet.  The public interest would not be disserved by entry of the injunction.

### G.    First Amendment Concerns

Defendant argues that the requested injunction would be an unconstitutional prior restraint on his First Amendment Rights.  Defendant's argument is unavailing.  In this case, the Court has determined that defendant has no enforceable trademark right, and that any assertions that plaintiffs stole his trademark rights are therefore false.  Although prior restraint of speech is constitutionally repugnant, Near v. State of Minnesota, 283 U.S. 697, 713 (1931), the First Amendment offers no protection for false or deceptive commercial speech.  Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 563 (1980); Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 503-04.  Moreover, freedom of speech "is . . . not an absolute right, and the state may punish its abuse."  Near, 283 U.S. at 707-08.  Once a final determination is rendered that a statement constitutes unprotected speech, "'it is not a prior restraint for a court to enjoin the defendant from repeating that statement.'"  New.Net. Inc. v. Lavasoft, 356 F. Supp. 2d 1071, 1084 (C.D. Cal. 2003) (citing Kramer v. Thompson, 947 F.2d 666, 676 (3d Cir. 1991)).

### H.    Permanent Injunctive Relief Is Granted In Part

Plaintiffs have succeeded on the merits of one of their asserted bases for injunctive relief and have satisfied the factors set out in eBay with respect to their request.

**CONCLUSION**

For the foregoing reasons, the Court: (1) GRANTS defendant's motion to vacate the judgment that "[d]efendant's use of [the name 'Hot Dog Hall of Fame'] does not invalidate

Schussler Creative's trademark for 'Hot Dog Hall of Fame;'" (2) DENIES defendant's motion to vacate its decision that defendant has "no trademark right in his use of 'The Hot Dog Hall of Fame;'" (3) enters an amended declaratory judgment in favor of plaintiffs consistent with these findings; and (4) GRANTS IN PART plaintiff's motion to permanently enjoin defendant from publishing certain statements.

Therefore, defendant and his officers, agents, employees, independent contractors, or other persons acting under his supervision or control or at his request are permanently enjoined from sending e-mails, letters, or other correspondence to current or prospective business associates of plaintiffs, or making verbal statements to such persons, or posting materials on a website, which state or imply that plaintiffs have stolen, misappropriated, or infringed upon defendant's *trademark rights* to the Hot Dog Hall of Fame.

**IT IS SO ORDERED.**

**DATED:  March 9, 2009**

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

- 16 -